IN THE

## SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-YORK,

IN FEBRUARY TERM, 1810, IN THE THIRTY-FOURTH YEAR
OF OUR INDEPENDENCE.

———

### WARREN *against* LYNCH.

THIS was an action of *assumpsit* brought by the plaintiff, as the first endorsor of a promissory note, against the defendant, as maker. The note was as follows: "*Petersburg*, (*Virginia*,) *August* 27, 1807. Four months after date, I promise to pay *Hopkins Robertson* or order, the sum of seven hundred and nineteen dollars, 12 1-2 cents, witness my hand and seal. Payable in *New-York*.

THOMAS LYNCH. (L.S.) "

The flourish, and initials L. S. at the end of the maker's name, constituted what was called his seal. The defendant pleaded *non assumpsit*, with notice of special matter to be given in evidence at the trial.

An instrument for the payment of money, executed in *Virginia*, but payable in *New-York*, and which by the manner of its execution was regarded by the laws of *Virginia* as a sealed instrument, was, in a suit here, held to be governed by the laws of this state and to be a negotiable note, or simple contract. A scrawl, with the pen, of L. S. at the end of the name is not a seal. A seal is capable of being an impression upon wax or wafer, or some other tenacious substance capable of being impressed. Where A. the debtor of B. gave a note to C. for the amount of the debt, in order to prevent its being attached by a creditor of B. and before any attachment had issued; and C. endorsed the note to D., who had advanced money for A., it was held that D. not being privy to any fraud in A., could not be affected by it, and might recover the note as a *bona fide* endorsee with consideration.

In a conversation between the plaintiff and defendant, at the office of the plaintiff's attorney, before any suit was commenced, the defendant admitted the execution of the note, but said he did not consider himself answerable, having paid the amount to *Mason* and *Smedes*, of *New-York*, under certain proceedings against him in *Virginia*. On its being suggested that some difficulty might arise in declaring on the note, as it purported to be sealed, and a suit was in contemplation, the defendant signed a written agreement, dated 15th *April*, 1808, entitled in the cause, declaring that the note upon which the suit was brought, though it purported to be sealed, had, in fact, no wafer or wax thereto, and was to be considered as a common promissory note, and that all objections as to form were to be waived.

It was admitted by the plaintiff's counsel, that by the laws of *Virginia*, a note executed in the manner this was, had all the efficacy of an instrument sealed with a wafer or wax.

The judge, at the trial, was of opinion, on this evidence, that the note was to be considered as a negotiable promissory note, and the plaintiff as an innocent holder, for a valuable consideration.

To prove that the defendant had paid the amount of the note to *Mason* and *Smedes*, of *New-York*, and to impeach the title of the plaintiff, the following evidence, though objected to by the plaintiff, was admitted by the judge.

1. An exemplification of a statute of the state of *Virginia*, authorizing the creditors of absent debtors to attach the effects and credits of such absent debtor in the hands of the debtors of such absent debtor.

2. An exemplification of the record of the proceedings in the court of chancery of the state of *Virginia*, under the said statute, by which it appeared that *Mason* and *Smedes*, merchants of the city of *New-York*, in *September*, 1807, instituted a suit against the defendant,

*Hopkins Robertson*, and *William Rose*, in order to attach the sum due on the said instrument, for the payment of a debt due from *William Rose* to *Mason and Smedes ;* and it further appeared that *Rose* had been insolvent, and while insolvent, went to *Virginia ;* and under a repre- sentation that he had transferred all his claims against *Lynch* to *Hopkins Robertson*, and that he was authorized by *Robertson* to settle the said claim with *Lynch*, pre- vailed on him to execute the instrument above mentioned ; and that on the belief that this was a scheme adopted to prevent the creditors of *Rose* from attaching the said claim against *Lynch*, for the payment of the debts of *Rose*, and that it was fraudulent, the court in *Virginia* decreed that *Lynch*, the defendant in the suit, should, after de- ducting the costs of suit, pay over to *Mason* and *Smedes*, the balance of the sum due on the said instrument, under their indemnification against the same, which was ac- cordingly done. The decree was made in *January*, 1808, and was taken *pro confesso* against *Rose* and *Robertson*, in consequence of their not appearing.

It was also proved that the plaintiff had been employ- ed by *Rose* to settle his debts with his creditors, and that he had settled some of them, and procured some of the creditors to sign a petition of *Rose* to be dis- charged under the insolvent act ; that an attachment was issued against *Rose* in *Virginia*, in the summer of 1807, and that early in *August*, 1807, the plaintiff settled several claims of the creditors of *Rose*, by giving his own notes to the amount of 400 dollars and upwards, and the at- tachment was dismissed. These transactions were pre- vious to the giving of the instrument in question.

The defendant offered *Hopkins Robertson*, as a witness to prove that he had given no consideration to *Lynch* for the note, and that he had endorsed it to the plaintiff without consideration, and that the representation made by *Rose* to *Lynch* to induce him to execute the instru- ment was false. The judge rejected the testimony of the

ALBANY,
Feb. 1810.

WARREN
v.
LYNCH.

witness, as to the consideration of the note, on the ground of his being an endorsor, and so far incompetent; but permitted him to testify as to the truth of the representation by *Rose* to *Lynch*. The witness stated that he had no knowledge of *Lynch*; that the claim of *Rose* had not been transferred to him; that *Rose* brought him the instrument in question; that he put his name on the back to give it negotiability, and returned it to *Rose*.

On this evidence, the judge was of opinion that the plaintiff was entitled to recover; and under his direction, the jury found a verdict for the plaintiff, for the amount of the note with interest.

*Baldwin*, for the defendant. 1. The agreement made by *Lynch*, the defendant, ought not to be held valid, so as to produce the effect given to it by the judge. *Mason* and *Smedes* are the real owners of the note, and their rights ought to be protected equally with those of an assignee. The effect of this paper is to defeat the rights of *Mason* and *Smedes*, by destroying the defence set up in the cause in *Virginia*, and, by obliging the defendant to pay the money a second time, to render *Mason* and *Smedes* liable on the bond of indemnity given by them. The defendant must have signed the paper through ignorance or fraud, either of which ought to be sufficient to invalidate it.

2. But admitting the agreement to be unobjectionable, it cannot have the effect to render a sealed instrument a negotiable note. If it is a specialty, it must be declared on as such; and the legal objection is valid, notwithstanding the agreement. A sealed instrument cannot be given in evidence to support a count on a simple contract.

The initials L. S. with a flourish, at the end of the name, by the laws of *Virginia* must be considered as a seal.* The instrument having been made there, it ought

* *Wash. Rep.* 42.
2 *Caines,* 362.

to be governed by the laws of that state. The law of the place where the contract is made is to govern as to the nature, construction and effect of it; but the mode of enforcing the payment or execution of the contract is regulated by the law of the place where the suit is brought.

3. *Robinson* ought to have been admitted to prove that the defendant received no consideration for the note, and that the same was endorsed without consideration. The rule which excludes endorsors, or persons whose names appear on negotiable paper, from being witnesses to invalidate such paper, does not apply to the present case.

*T. L. Ogden,* contra. 1. There is no ground for any imputation of fraud in the conduct of the plaintiff. He is a holder of the note for a valuable consideration. The arrangement by which it was made payable in *New-York* was *bona fide* and proper. The plaintiff has more equity on his side than *Mason* and *Smedes,* and having also the legal right, he ought to prevail.

The note, on the face of it, being made payable in *New-York,* is to be governed by the laws of *New-York.** It has every form and quality of a common negotiable promissory note. The letters L. S. added to the name of the maker cannot destroy that negotiability, or make it a sealed instrument. The case of *Meredith* v. *Hinsdale*† went no farther than to give effect to an instrument made in *Pennsylvania* and to be executed there, according to the laws of that state. In *Virginia* there is a statute declaring the mark of L. S. at the end of the name to be a seal; and in *Pennsylvania,* long usage and the decisions of their courts have made the same law. But in this state there is no such statute or usage.

2. The agreement entered into by the defendant in regard to the note was voluntary. Ignorance is not pretended; and if there be any fraud in the defendant, he cannot take advantage of it. If this agreement is valid,

ALBANY,
Feb. 1810.

WARREN
v.
LYNCH.

* *Thompson* v.
*Ketcham,* 4
*Johns. Rep.* 285.

† 2 *Caines,* 362:

it puts an end to the question; and the instrument must be taken to be a common promissory note.

3. If the paper in question is to be considered as a negotiable note, the evidence of *Robertson* was properly rejected; but, in fact, it did go to the jury. The possession of the note is *prima facie* evidence that the plaintiff came fairly by it, and for a valuable consideration. Again, the plaintiff had advanced money for *Rose*, and this was a sufficient consideration for the note taken from the defendant.

*Baldwin*, in reply, observed, that there was sufficient evidence to show that the plaintiff and defendant had colluded together to defraud *Mason* and *Smedes;* and that the note was drawn in the manner in which it appears, in order to defeat the operation of the attachment in *Virginia;* and that such a fraud ought not to be countenanced, nor the parties suffered to profit by it in this suit.

KENT, Ch. J. delivered the opinion of the court. The two questions made upon this case are, 1. What is the legal import of the instrument upon which the suit is brought? and, 2. Was the evidence sufficient to entitle the plaintiff to recover?

1. The note was given in *Virginia*, and by the laws of that state it was a sealed instrument or deed. But it was made payable in *New-York*, and according to a well settled rule, it is to be tested and governed by the law of this state. (4 *Johns. Rep.* 285.) Independent then of the written agreement of the parties, (and on the operation of which some doubt might possibly arise,) this paper must be taken to be a promissory note, without seal, as contradistinguished from a specialty. We have never adopted the usage prevailing in *Virginia* and in some other states, of substituting a scrawl for a seal; and what was said by Mr. Justice *Livingston*, in the case of

*Meredith* v. *Hinsdale*, (2 *Caines*, 362.) in favour of such a substitute, was his own opinion, and not that of the court. A seal, according to Lord *Coke*, (3 *Inst.* 169.) is wax with an impression. *Sigillum est cera impressa, quia cera sine impressione non est sigillum.* A scrawl with a pen is not a seal, and deserves no notice. The law has not indeed declared of what precise materials the wax shall consist; and whether it be a wafer or any other paste or matter sufficiently tenacious to adhere and receive an impression, is perhaps not material. But the scrawl has no one property of a seal. *Multum abludit imago.* To adopt it as such would be at once to abolish the immemorial distinction between writings sealed, and writings not sealed. Forms will frequently, and especially when they are consecrated by time and usage, become substance. The calling a paper a deed will not make it one, if it want the requisite formalities. " Notwithstanding, says *Perkins*, (sect. 129.) that words obligatory are written on parchment or paper, and the obligor delivereth the same *as his deed*, yet if it be not sealed, at the time of the delivery, it is but an *escrowl*, though the name of the obligor be subscribed." I am aware that ingenious criticism may be indulged at the expense of this and of many of our legal usages; but we ought to require evidence of some positive and serious public inconvenience, before we, at one stroke, annihilate so well established and venerable a practice as the use of seals in the authentication of deeds. The object in requiring seals, as I humbly presume, was misapprehended both by President *Pendleton*, and by Mr. Justice *Livingston*. It was not, as they seem to suppose, because the seal helped to designate the party who affixed it to his name. *Ista ratio nullius pretii*, (says *Vinnius*, in *Inst.* 2. 10. 5.) *nam et alieno annulo signare licet.* Seals were never introduced or tolerated in any code of law, because of any family impression, or image, or initials which they might contain. One person might always use another's seal, both in the *English* and in the

*Roman* law. The policy of the rule consists in giving ceremony and solemnity to the execution of important instruments, by means of which the attention of the parties is more certainly and effectually fixed, and frauds less likely to be practised upon the unwary. President *Pendleton*, in the case of *Jones* and *Temple* v. *Logwood*, (1 *Wash. Rep.* 42.) which was cited upon the argument, said that he did not know of any adjudged case that determines that a seal must necessarily be something impressed on wax; and he seemed to think that there was nothing but Lord *Coke's* opinion to govern the question. He certainly could not have examined this point with his usual diligence. The ancient authorities are explicit, that a seal does, in legal contemplation, mean an impression upon wax. " It is not requisite," according to *Perkins*, (sect. 134.) " that there be for every grantor who is named in the deed a several piece of wax, for one piece of wax may serve for all the grantors, if every one put his seal upon the same piece of wax." And *Brooke*, (tit. *Faits*, 30. and 17.) uses the same language. In *Lightfoot* and *Butler's* case, which was in the Exchequer, 29 *Eliz.* (2 *Leon.* 21.) the Barons were equally explicit, as to the essence of a seal, though they did not all concur upon the point, as stated in *Perkins.* One of them said that twenty men may seal with one seal upon one piece of wax only, and that should serve for them all, if they all laid their hands upon the seal ; but the other two Barons held that though they might all seal a deed with one seal, yet it must be *upon several pieces of wax.* Indeed this point, that the seal was an impression upon wax, seems to be necessarily assumed and taken for granted in several other passages which might be cited from *Perkins* and *Brooke*, and also in Mr. *Selden's Notes* to *Fortescue;* (*De Laud.* p. 72.) and the nature of a seal is no more a matter of doubt in the old *English* law, than it is that a deed must be written upon paper or parchment, and not upon wood or stone. Nor has the common law ever been altered in *Westmin-*

*ster Hall*, upon this subject; for in the late case of *Adam* v. *Keer*, (1. *Bos.* and *Puller*, 360.) it was made a question whether a bond executed in *Jamaica*, with a scrawl of the pen, according to the custom of that island, should operate as such in *England*, even upon the strength of that usage.

The *civil law* understood the distinction and solemnity of seals as well as the common law of *England*. Testaments were required not only to be subscribed, but to be sealed by the witnesses. *Subscriptione testium, et ex edicto prætoris, signacula testamentis imponerentur.* (*Inst.* 2. 10. 3.) The *Romans* generally used a ring, but the seal was valid in law, if made with one's own or another's ring; and, according to *Heineccius*, (*Elementa juris civilis secundum ord. Inst.* 497.) with any other instrument, which would make an impression, and this, he says, is the law to this day throughout *Germany*. And let me add, that we have the highest and purest classical authority for Lord *Coke's* definition of a seal; *Quid si in ejusmodi cera centum sigilla hoc annulo impressero?* (*Cicero. Academ. Quæst. Lucul.* 4. 26.)

2. The instrument being a promissory negotiable note, the next point is, whether the plaintiff did not show enough to entitle him to recover as a *bona fide* endorsee for a valuable consideration. There were circumstances to induce an opinion, that as between the defendant and *Rose*, the note was given for the purpose of placing the debt due from the defendant to *Rose*, out of the reach of the creditors of *Rose*, who was insolvent. But there is no evidence to bring this fraud (if any there was) home to the knowledge of the plaintiff. He was the agent of *Rose* for the purpose of settling with his creditors, and just before the note was given, he was in advance upwards of 400 dollars for *Rose*. The note was drawn before the existence of the attachment of *Mason* and *Smedes*; and being a creditor of *Rose* to such an amount, I think

the plaintiff showed enough to rebut the presumption of his having taken the note without consideration ; and that upon both grounds the motion for a new trial ought to be denied.

Rule refused.