Porter *vs.* McCollum and another.

No. 78.—M. A. PORTER, plaintiff in error, *vs.* J. A. McCOLLUM and another, defendants in error.

[1.] A fair and reasonable construction of an acknowledgment of service of notice, of the signing and filing of the bill of exceptions, and a waiver of further notice entered on the original notice is, that it was intended to waive service of all further proceedings, necessary to carry the case to the Supreme Court.

Porter *vs.* McCollum and another.

[2.] A promissory note, made payable to bearer, is negotiable by delivery; and by the usage and custom of merchants, has that negotiable quality, though it be under seal.

Certiorari. · Dougherty Superior Court, May Term, 1854. · Decision by Judge PERKINS.

This was originally an action in a Justice's Court, brought by the *bearer*, the plaintiff in error, upon a promissory note, under seal, made by the defendants in error, and payable to "Nancy Kelly or bearer". That Court dismissed the action, on the ground that such an instrument was not transferable by delivery. On *certiorari*, the Superior Court affirmed this de- · cision, and this is the error assigned in this Court.

A preliminary motion was made, to dismiss the writ of error, on the ground that there was no evidence of the service of the writ of error and citation. On the original notice, was this entry—" service of the notice of the signing and certifying of the bill of exceptions acknowledged, and farther service waived", which was signed by the counsel for defendants in error.

WARREN & WARREN, for plaintiff in error.

STROZIER, for defendants.

*By the Court.*—STARNES, J., delivering the opinion.

[1.] We think that a fair and reasonable construction of the entry on the original notice, is an acknowledgment of service, as to that notice, and a waiver of service, as to all the other proceedings necessary to carry the case to the Supreme Court.

The defendant in error acknowledges service of the notice in terms; it was quite unnecessary and superfluous to add a waiver of further service of that notice; it would seem unreasonable, therefore, to hold that it was the defendant's intention, by this entry, to make such waiver. But it was very reasona-

ble that such entry should have been made, if the intention was to dispense with service of the writ of error and citation; and we think, consequently, that this is the proper construction to place upon this entry. The motion to dismiss the writ of error, is therefore over-ruled; and we proceed to give our opinion upon the merits of the case.

[2.] At Common Law, promissory notes were not negotiable by delivery. But it seems, that in England, from a very early period, they were made so by the custom of merchants. Something of a struggle ensued in the Courts, between the Common Law and this custom. The Statute 3 and 4 of *Anne, ch.* 9, was passed, to terminate this struggle, and to make that custom the indisputable law of the land. That Statute declared that promissory notes, "payable to any person or persons, body politic, &c. or their order, or unto bearer, shall be assignable or indorsable over, in the same manner as inland bills of exchange are, or may be, according to the custom of merchants".

Now, it is said, that a note under seal, was not contemplated by the Statute of *Anne*, but only such notes as were then ordinarily employed in commerce, and known to the usage and custom of merchants. Such was the decision in the State of New York, in the case of *Clark vs. Farmer's Man'g Co.* (15 *Wend.* 256.) It was not so held, (as supposed in the argument of the case before us,) in the case of *Warren vs. Lynch,* (5 *John.* 239.) *Kent, C. J.* there ruled, that the note before him was not under seal, and forbore, expressly, to decide the other question. So that we have not the opinion of that distinguished Judge, distinctly, upon the point.

The decision of that point must turn, we think, altogether upon what is the custom of merchants, in this respect, as a part of the law merchant in our State.

It will be observed, that the Statute of *Anne* not only makes notes assignable by delivery, in the manner that inland bills of exchange were then assignable, &c. according to the custom of merchants, but "in the same manner that inland bills of exchange *may be*", &c. Here was, evidently, an elastic provision, fitted to meet such change or modifications in the usage or custom, in this

regard, as might be subsequently adopted. The fact, therefore, that promissory notes, under seal, were not, at the passage of that Statute, within the contemplation of the law-maker, is not a sufficient reason why they should not now be within the purview of the Statute, if the custom of merchants places them there.

The Court of Errors in New York, however, puts its decision upon the ground, that such promissory notes were not contemplated by that Statute ; that is to say, were not, at the time of its passage, specifically within the contemplation of the law-maker. We cannot follow this view of the subject ; and cannot hold that a promissory note, under seal, is not within the terms of the Statute of *Anne*, unless we are satisfied that by the law-merchant, as now of force in our State, such instruments cannot be included within the provisions of this Statute of *Anne*.

It would seem, from adjudicated cases, that the negotiability of a paper, by delivery, properly depends upon its terms, rather than upon the fact of its being or not being under seal. As a general rule, bonds, specialties, &c. (especially was this true, at the time of the enactment of the Statute of *Anne*,) are not intended to be negotiated by delivery—are not designed to pass from hand to hand ; and hence, no doubt, the other general rule, which we find in the Books, that specialties are not negotiable by delivery. But there seems to be no sufficient reason why a specialty—that is to say, an instrument under seal, purposely framed and intended to pass by delivery, should not be negotiable. And this appears to be the practical operation of the matter, among merchants in England, as it is the view which Courts have there taken of the law-merchant.

Bonds made payable to bearer, have been held negotiable, in the Courts of England. In the case of *Gergeir vs. Melville*, (3 *Barn. & C.* 451,) which was a suit upon a Prussian bond, Lord *Tenterden*, (then C. J. *Abbott*,) decided, that it was negotiable, because "the sum mentioned in the bond, is due to every person who shall, for the time being, be the holder of it". And further—that "it was precisely analogous to a bank note,

payable to bearer, or to a bill of exchange indorsed in blank," &c.

In the case of *Clark vs. The Farm. Man'g Co.* above mentioned, the Court of Errors, in New York, express the opinion that Ch. J. *Abbot* erred in distinguishing this Prussian bond from the East India bonds, which had been decided to be not negotiable, in the case of *Glynn vs. Baker*, (13 *East.* 509.)

By looking to that case, we will see that the decision was placed, not upon the fact that the bonds were under seal, but upon the ground that they were made payable to the obligee, his executors, &c.   The form of these bonds is there furnished, and we find that they were payable "to W. G. S. his executors, &c. (by indorsement hereon,) with interest", &c.   And *LeBlanc*, J. in view of this fact, says, that "no action could be brought upon this bond, but by Sibly the obligee, or in his name; or if he died, in the name of his executors".   Hence, Ch. J. *Abbott* was right in the rule he laid down, and the criticism of the Supreme Court of N. York, has not damaged the authority of his decision, in our opinion.

But the Court in N. York say that the negotiability of this Prussian bond, rested "upon usage".   There is nothing, in the case cited, (of *Gergeir vs. Melville*,) nor do the Supreme Court of N. York state any fact or furnish any evidence, to show that there is any usage of this kind, *peculiar to Prussian bonds*. The only expression upon which they could rest such an assertion, is the observation of the Ch. Justice, that "it was proved, at the trial, that bonds of this description were negotiated like exchequer bills".   So far from this expression authorizing the conclusion at which the Court in New York have arrived, when it is taken in connection with the few words which precede it, it proves just the contrary.   The whole sentence is, "here, on the contrary, the bond was payable to the bearer, and it was proved, on the trial, that bonds of this description were negotiated," &c.   Of what description?   Why, plainly, *bonds payable to the bearer*.

This is plain enough, but it becomes still more so, by referring more particularly to that case of *Glynn vs. Baker*, which

furnishes strong support to the view we are taking. In that case, the observations of Lord *Ellenborough* and Mr. J. *Le-Blanc*, go to show, that the negotiability of commercial instruments, depended upon their terms and *contemporaneous* mercantile usage; and that the question of negotiability, where the instrument was so framed as to admit of it, sometimes depended upon proof before the Jury, of what was then the custom and usage of merchants, in relation to that particular instrument. And the case, as we understand it, goes upon the ground, that these India bonds could not acquire negotiable quality, even by such proof of usage, because they were made payable to the obligee, &c. and not to bearer—*LeBlanc*, J. saying, that "even if the case went to trial again, to inquire into the fact of the negotiability of India bonds, the defendant would never be able to persuade a Jury to find that they were negotiable instruments, like bills of exchange".

We think these cases sufficiently show, that a promissory note, made payable to bearer, is negotiable by delivery; and that according to the usage and custom of merchants, it does not lose this negotiable quality, by having a seal annexed to it.

Judgment reversed.