JANUARY TERM 1865. **251**

Bates & another *v.* Boston and New York Central Railroad Company & others.

JOHN D. BATES & another *vs.* BOSTON AND NEW YORK CEN-
TRAL RAILROAD COMPANY & others.

A fac-simile of the seal of a corporation printed upon blank forms of obligations prepared
to be executed by the corporation at the same time when the blank is printed and by the
same agency is not a seal, at common law, nor will such forms, when executed by the
corporation, be contracts under seal, although the language of them calls for a seal.

The *St.* of 1855, *c* 223, providing that the mere impression of the seal of a corporation upon
any legal instrument executed by such corporation shall thenceforth be valid, is not retro
spective in its operation.

BILL IN EQUITY filed August 1st 1861, and alleging, amongst
other things, that on the 13th of March 1852 the Norfolk County
Railroad Company, a corporation which then owned certain real
and personal property, being indebted to the plaintiffs, executed
and delivered to them certain bonds, a copy of one of which was
annexed, similar in form, and under the seal of the corporation,
payable January 1st 1854, which constituted valid obligations in
favor of the plaintiffs against the corporation; that the plaintiffs
are still the holders thereof; that afterwards, under the author-
ity of different acts of the legislature, the Norfolk County Rail-
road Company united with other railroad companies and became
a corporation under the name of the Boston and New York
Central Railroad Company, which new corporation took the
property of the Norfolk County Railroad Company subject to
the trust and obligation to apply the same, so far as necessary, to
the payment of the debts of that company; and the prayer was
that the new corporation and its officers might be compelled so
to apply the said property.

The instrument referred to as a bond of the Norfolk County
Railroad Company, was as follows : " Norfolk County Railroad
Company. $*112*. Due January 1, 1854. No. *8*. Be it known
that there is due to the holder of this Certificate *one hundred*
and *twelve* Dollars, for value received, to be paid at the Office
of the Treasurer of the Norfolk County Railroad Company in
Boston, on the first day of January One Thousand Eight Hun-
dred and Fifty-Four, with interest payable semi-annually, from
the first day of January A. D. 1852, on presentation of th

corresponding interest warrant hereunto annexed. In witness whereof, and pursuant to a vote of the Directors of said Com pany, the Treasurer has signed this Certificate, and affixed the seal of the Corporation, this thirteenth day of January, One Thousand Eight Hundred and Fifty-Two; and the President has countersigned the same. *Edward Haynes, Jr.* Treasurer. *Welcome Farnum,* President." A printed form was used for the above instrument, the portions which are here printed in italics having been written in; and a printed impression in the form of a seal was also upon it.

The parties agreed that when these instruments were issued " there was impressed upon each and all of said papers, on the paper thereof, the corporate seal of said Norfolk County Rail road Company; the defendants contend however that said act does not make said papers sealed instruments, and that said im pression is not a seal;" and that said papers were issued by the proper officers of the company, as an execution of a certain vote of the company, authorizing the treasurer " to give the notes or bonds of the company for any other liabilities of the company." Certain other facts were also agreed, which are now immaterial.

The case was reserved by *Metcalf,* J. for the determination of the whole court.

*C. T. Russell,* for the plaintiffs, cited Gen. Sts. *c.* 3, § 7, *cl.* 15; *Tasker* v. *Bartlett,* 5 Cush. 359, 364; *Mill Dam Foundery* v. *Hovey,* 21 Pick. 417; *Bradford* v. *Randall,* 5 Pick. 496; *Commonwealth* v. *Griffith,* 2 Pick. 11; Sugden on Powers, (8th ed.) 232; *The Queen* v. *St. Paul,* 7 Q. B. 232.

*H. W. Paine & S. W. Bates,* for the defendants, cited, in addi tion to cases cited for the plaintiffs, 4 Kent Com. (6th ed.) 452; *Warren* v. *Lynch,* 5 Johns. 239; *Coit* v. *Milliken,* 1 Denio, 376 · *Bank of Rochester* v. *Gray,* 2 Hill, 227; *Farmers' & Manufac turers' Bank* v. *Haight,* 3 Hill, 493.

DEWEY, J. The plaintiffs seek by means of this bill, to en force payment of certain certificates of indebtedness given to them by the Norfolk County Railroad Company. As the foun dation of the bill, it becomes necessary to establish the fact of a present existing indebtedness to them on the part of tha*

company. This they attempt to do by the production of cer
tain instruments bearing date January 13th 1852, and signed by
the treasurer and the president of the company, acknowledging
such indebtedness, and promising to pay the same with interest
semi-annually, on the first day of January 1854, the form of which
certificates is fully set forth in the bill.

The defendants interpose the statute of limitations as a bar
to any right on the part of the plaintiffs to enforce the payment
of these bonds. By the Gen. Sts. *c.* 155, actions of contract
founded upon any contract or liability not under seal, except
such as are brought upon a judgment or decree of some court
of record of the United States, or of this or some other of the
United States, shall be commenced within six years next after
the cause of action accrues. Unless the exception as to contracts
" under seal " applies to these certificates, they are clearly barred,
as they became due and payable on the 1st of January 1854,
and no action was commenced within six years from that date.
But the plaintiffs insist that the contracts they now seek to en-
force are under seal, and so are embraced in the exception clause.
The Rev. Sts. *c.* 120, § 1, have provisions similar to the Gen.
Sts., and it is the former that are applicable to this case, if any,
as the six years' limitation had taken effect before the Gen. Sts.
went into operation. The character of these contracts in a legal
point is to be determined by the law as it existed when the con-
tracts were made. To decide what constitutes a contract under
seal, as applicable to this case, we must resort to the common
law doctrine as held in Massachusetts at that time, for we had
then no statute as to what should constitute seals in cases of
personal contracts. We had a provision as to seals of the courts
and public offices, where the same were required by law, de-
claring as to such cases that the word " seal" should be con-
strued to include an impression of such official seal made upon
the paper alone, as well as an impression made by means of a
wafer or of wax affixed thereto. Rev. Sts. *c.* 2, § 6. This au-
thority, confined as it was to courts and public offices, yet obvi-
ously contemplated something more than a printed impression
upon the instrument made by the printer in connection with the

printing of the blank writ or certificate. The common law doc-trine as to a seal was, that there must be a wafer or wax, or some other tenacious substance capable of receiving the impression of a seal made upon it. It was so assumed in *Common-wealth* v. *Griffith,* 2 Pick. 18; *Bradford* v. *Randall,* 5 Pick. 496; and *Tasker* v. *Bartlett,* 5 Cush. 364. It was fully considered and settled in New York, in the case of *Warren* v. *Lynch,* 5 Johns. 239, and recognized in *Farmers' & Manufacturers' Bank* v. *Haight,* 3 Hill, 493, and other cases. The theory of the purpose of seals, as expounded by Kent, C. J., in *Warren* v. *Lynch,* was, that it required greater ceremony and solemnity in the execution of important instruments, by means of which the attention of the parties is more certainly and effectually fixed.

So well settled has the law been in this respect that no one, we suppose, doubts as to the nature of the seals required upon contracts made by individuals. The practice that has recently prevailed of making a printed impression purporting to be a seal on contracts of corporations, as a substitute for the common law seal, has with us no legal foundation or authority, except so far as it has been sanctioned by our statutes. The attempt to make a substitute for the common law seal in the present instance was a greater departure than that of impressing the actual seal of the corporation upon paper alone. This was the mere printing of a fac-simile of the seal at the same time and by the same agency as the printing of the certificates, to be afterwards signed by the president and treasurer. As to the seal, nothing was left to be done by the officers of the corporation, who alone were authorized to affix the corporate seal. This practice is certainly in derogation of the whole theory of sealing contracts. It was the fact that the obligor did two independent acts, first, that of signing, and secondly, that of sealing, that in the theory of the law gave so much more solemnity to the contract, and imported so much greater deliberation, and therefore entitled it to be enforced without any proof of a particular consideration or recital that it was for value received, as well as extended its vitality beyond the period of six years, and excepted

it from the bar incident to all personal contracts which were merely signed by the promisor.

We were referred by the counsel for the plaintiffs to Sugden on Powers, (8th ed.) 232, as sustaining the form of seal here used; but upon examination of that treatise, we think it fails so to do. While the writer holds that it is not necessary to use wax or a wafer, though citing no authorities for this opinion, he clearly rejects the case of a seal impressed by blocks or types in connection with the printing of the instrument that is to be the contract when duly executed by the properly authorized officer of the corporation, stating that in the execution of a deed there are required three distinct acts : 1. The determination in the mind to do the act. 2. The signing of the instrument. 3. The sealing. As to the latter, he says : " If the seal, stick or other instrument used be impressed by the party on the plain parch-ment or paper with intent to seal it, it is clearly sufficient." This is undoubtedly a modification of the common law doctrine of a seal, as we have it in 3 Inst. 169, and as the same has been understood in this commonwealth; but even this does not give validity to any such form of sealing as was adopted in these certificates. The statement of Mr. Sugden as to the presump-tion of a seal where it is recited in the deed to have been sealed, that it will, in the absence of evidence to the contrary, be pre-sumed to have been sealed, although no impression appear on the parchment or paper, if correct, (but as to which we have the authority of Kent, C. J., citing Perkins, § 129, to the contrary, in the case of *Warren* v. *Lynch,* 5 Johns. 239,) would not aid the present case, because here no presumption arises, as all that was done is visible to the eye and remains unchanged. If that which appears on the instrument is not a seal, we have no right to pre-sume that the instrument was sealed.

The case of *The Queen* v. *St. Paul,* 9 Jur. 442, *S. C.* 7 Q. B. 232, cited by the plaintiffs, is in some respects more favor-able to them, as the objection there taken to the seal was, that it was an impression made by means of a wooden block. That case arose upon an appeal from an order of certain justices, for the removal of one T. H. Other objections to sustaining the

order were also taken, and they were held sufficient, irrespective of that as to the seal. As to that, the court say : " We do no wish there should be any doubt upon the point as to the validity of the seal. We seal in this way; but we hold the order bad on another ground." This was a judicial process, and the remarks as to the seal were with reference to judicial processes, and not applied to cases of personal contracts. We know that to some extent such practice has prevailed as to judicial processes in those states where the common law rule has been held strictly as to the seals of individuals. We are also aware that in many of our sister states a different rule prevails, as to what is necessary to constitute a sealed contract, from that which has been uniformly held in Massachusetts. In some of them this is founded upon statute provisions, and in others upon long usage, recognized by judicial decisions. But, in the absence of any such statute or usage, the scroll, whether made by a pen or types, does not change the character of the instrument from a simple contract to one under seal, or give it the legal effect of importing a consideration when none is expressed, or extending the statute of limitations from the period of six to twenty years. Such contract is entitled to all the binding effect upon the promisor that a contract not under seal has, and nothing more. In the present instance, the contract recites that it is given " for value received," and assumes in that respect the form of a promissory note rather than a bond.

Our course of legislation fully confirms the opinion that this was the well understood law with us. It was because this was so that the various statutes modifying our common law in this respect have been adopted ; and the further inquiry is, whether, by force of any statute, these certificates may be deemed contracts under seal. Clearly no such statute existed at the time of their execution and delivery. The earliest statute on the subject was that of 1855, *c.* 223. But that statute was not retrospective, or applicable to instruments previously executed. It cannot be so construed as to affect contracts which were made before its enactment. *North Bridgewater Bank* v. *Copeland,* " Allen, 139, and cases there cited.

The *St.* of 1855, *c.* 223, was repealed before the institution of this suit, and was succeeded by the provisions of Gen. Sts. *c.* 3, § 7. This latter statute does not aid the plaintiffs, if it shall be deemed broad enough to embrace the cases of contracts by corporations, for the further reason that these contracts had been already absolutely barred by the statute of limitations, Rev. Sts. *c.* 120, § 1, before the Gen. Sts. went into operation, and the Gen. Sts. cannot be construed to have the effect to remove the bar, and revive them as valid contracts. These instruments are not therefore to be construed as contracts under seal by the rules of the common law, as held by this court at the time of their execution and delivery. This leaves them to be treated as simple contracts, liable to be barred by the lapse of six years after they fell due, without any attempt to enforce them. The right of the creditors to enforce these claims, so far as they have any, accrued on the day the debts became due, and the period of six years' limitation would commence at that date.

Although this is a proceeding in equity, yet the court will equally apply in a proper case the statute of limitations. *Farnam* v. *Brooks*, 9 Pick. 212. *Baker* v. *Atlas Bank*, 9 Met. 195. *Commonwealth* v. *Cochituate Bank*, 3 Allen, 50.

The result is, therefore, that the plaintiffs have failed to establish any legal indebtedness to them, on the part of the Norfolk County Railroad Company, existing at the time of filing this bill.

The present was peculiarly a case where these creditors should have early enforced their rights against the property of the Norfolk County Railroad Company, in the hands of the Boston and New York Central Railroad Company. But the plaintiffs, instead of promptly availing themselves of their rights in this respect, wholly neglected to enforce them, and permitted the property, so far as any remained, to pass to another company, and as against this latter company, delayed attempting to enforce these claims until January 1861, being a period of more than seven years after the debts matured. The defence thus taken is well maintained, and the bill must be dismissed.