## Case No. 7,311.

### JEWETT v. HONE.

[1 Woods, 530;[1] 2 Am. Law T. Rep. (N. S.) 97.]

Circuit Court, S. D. Georgia. Nov. Term, 1873.

Thomas M. Norwood, for plaintiff.

Yates Levy and Geo. A. Mercer, for defendant.

WOODS, Circuit Judge. This action is brought by plaintiffs as holders, against the defendant as acceptor of a bill of exchange, of which the following is a copy: "$2,587.90. New York, June 25, 1870. Thirty days after date, pay to the order of ourselves, twenty-five hundred and eighty-seven 90/100 dol-

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

lars, with exchange on New York. and charge the same to account of Christol & Struthers. To Mr. Wm. Hone, Savannah, Ga." The bill was indorsed by Christol & Struthers, and accepted by defendant. To the declaration upon this bill the defendant has pleaded the general issue, and a special plea to the effect that the acceptance was without consideration and for the accommodation of the drawers, and that the bill was given to the plaintiffs in liquidation of an antecedent debt due from the drawers to the plaintiffs, and that no injury or detriment has accrued to the plaintiffs, or benefit to the drawers or defendant by reason of said acceptance.

The facts about which there is no dispute are in substance these: On the 25th of June, 1870, Christol & Struthers were a firm doing business in the city of New York. They were indebted to the plaintiffs, John Jewett & Sons, who were pressing them for payment. Christol & Struthers, being unable to pay their indebtedness to plaintiffs, applied to the defendant, William Hone, of Savannah, for assistance, which he assented to give. To this end Christol & Struthers drew the bill in question, which was indorsed by Christol & Struthers and accepted by Hone, who was purely an accommodation acceptor, and received no consideration for his acceptance, and Christol & Struthers agreed with him to pay the bill at maturity. The bill so indorsed and accepted was before maturity transferred by Christol & Struthers, who were "hard pressed," to the plaintiffs, who were their creditors, "in liquidation of a debt due them, and the plaintiffs "received it for the amount expressed on its face." Jewett & Sons knew when they received the draft that Hone was an accommodation acceptor.

The question presented by the case should have been raised on demurrer to the sufficiency of the plea. Such demurrer was not filed, and the point in controversy is submitted to the court upon the motion of plaintiff to exclude the evidence of the defendant tending to establish his special plea. The point for our determination is this: Can an accommodation acceptor of a bill of exchange, transferred before maturity by the drawees in liquidation of an antecedent debt, set up as a defense to an action against him upon the bill the fact that he was an accommodation acceptor, that fact being known to the holders when they received the bill?

It is claimed by the defendant that the contract sued on is a New York contract, made and to be performed in that state, and that it must be governed by the law of that state. It is further insisted that by the law of New York, as set forth in the decisions of the courts, the facts set up in the special plea would be a good defense to this action, and we are cited to the following cases: Wardell v. Howell, 9 Wend.

170; Rosa v. Brotherson, 10 Wend. 86; Hart v. Palmer, 12 Wend. 523; Root v. French, 13 Wend. 570. Is this court bound by these decisions, admitting that they set forth the settled doctrine in New York? This question was raised, and decided in the negative by the supreme court of the United States in Swift v. Tyson, 16 Pet. [41 U. S.] 1, in which the court says, in referring to the same decisions cited in this case: "It is observable that the courts of New York do not found their decisions upon this point upon any local statute or positive, fixed or ancient local usage, but they deduce the doctrine from the general principles of commercial law. It is however contended, that the thirty-fourth section of the judiciary act of 1789, c. 20 [1 Stat. 92], furnishes a rule obligatory upon this court to follow the decisions of the state tribunals in all cases to which they apply. That section provides that "the laws of the several states except when the constitution, treaties or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in cases where they apply. In order to maintain the argument it is essential therefore to hold that the word 'laws' in this section includes within the scope of its meaning the decisions of the local tribunals. In the ordinary use of language it will hardly be contended that the decisions of courts constitute laws. They are at most only evidence of what the laws are, and are not of themselves laws. They are often reexamined, reversed and qualified by the courts themselves whenever they are found to be either defective, or ill founded, or otherwise incorrect. The laws of a state are more usually understood to mean the rules and enactments promulgated by the legislative authority thereof, or long established local customs having the force of laws. In all the various cases which have hitherto come before us for decision, this court have uniformly supposed that the true interpretation of the thirty-fourth section limited its application to state laws strictly local; that is to say, to the positive statutes of the state and the construction thereof adopted by the local tribunals and to the rights and titles to things having a permanent locality such as the rights and titles to real estate and other matters immovable and intraterritorial in their nature and character. It has never been supposed by us that the section did apply or was designed to apply to questions of a more general nature, not at all dependent upon local statutes or local usages of a fixed and permanent operation, as for example to the construction of ordinary contracts or other written instruments, and especially to questions of general commercial law when the state tribunals are called upon to perform the like functions as ourselves, that is, to ascertain upon general reasoning and legal

analogies what is the true exposition of the contract or instrument, or what is the just rule furnished by the principles of commercial law to govern the case. * * * The law respecting negotiable instruments may be truly declared, in the language of Cicero, adopted by Lord Mansfield, in Luke v. Lyde, 2 Burrows, 883, 887, to be in a great measure not the law of a single country, but of the commercial world: 'Non erit alia lex Romae, alia Athenis, alia nunc, alia posthac, sed et apud omnes gentes et omni tempore una eademque lex obtinebat.'" This extract from the decision of the supreme court of the United States shows conclusively that we are not to be controlled by the decisions of the local tribunals of New York, in passing upon the rights of the parties in this action, even if these decisions were uniform; but they are not. Thus, in Warren v. Lynch, 5 Johns. 239, the supreme court of New York held that a preexisting debt was a sufficient consideration to entitle a bona fide holder, without notice, to recover the amount of a note indorsed to him, which might not, as between the original parties, have been valid; and the same doctrine was held by Mr. Chancellor Kent, in Bay v. Coddington, 5 Johns. Ch. 54. And the cases in 10, 12 and 13 Wendell, supra, have, by subsequent decisions of the supreme court of judicature of the state, been overruled. Bank v. Babcock, 21 Wend. 499; Bank v. Scoville, 24 Wend. 115. We think it clear, therefore, that in determining the liability of the defendant, we are to be guided by the rule of the general law merchant, and not by the shifting and conflicting decisions of any local tribunals.

Do the facts, then, as they appear in this case, constitute a defense to the action? We think the current and weight of authority sustain the doctrine that a bona fide holder, taking a negotiable note in payment of, or as security for a preexisting debt, is a holder for a valuable consideration, entitled to protection against all the equities between the antecedent parties. Swift v. Tyson, 16 Pet. [41 U. S.] 1; Cooledge v. Payson, 2 Wheat. [15 U. S.] 66; Townsley v. Sumrall, 2 Pet. [27 U. S.] 170; Atkinson v. Brooks, 26 Vt. 574; Poirier v. Morris, 20 Eng. Law & Eq. 103; Petrie v. Clark, 11 Serg. & R. 377; Gibson v. Conner, 3 Kelly, 47. In Swift v. Tyson [supra], the supreme court of the United States says: "It becomes necessary for us, upon the present occasion, to express our own opinion of the true result of the commercial law upon the question now before us. And we have no hesitation in saying that a preexisting debt does constitute a valuable consideration in the sense of the general rule as applicable to negotiable instruments. Assuming it to be true that the holder of a negotiable instrument is unaffected with the equities between the antecedent parties, of which he has no notice, only where he receives it in the usual course of trade and business, for a valuable consideration, before it becomes due, we are prepared to say that, receiving it in payment of, or as security for a preexisting debt is according to the known usual course of trade. * * * This question has several times been before this court, and it has been uniformly held that it makes no difference whatsoever as to the rights of the holder, whether the debt for which the negotiable instrument is transferred to him is a preexisting debt, or is contracted at the time of the transfer. In each case he equally gives credit to the instrument." In Atkinson v. Brooks, 26 Vt. 574, the court says: "But it has often been claimed that there is an essential difference in principle between taking a current note or bill in payment and as security for a prior debt then due. The transactions are certainly different in form at least. But it seems to me the ordinary case of taking such a security as payment, or as collateral to the prior debt, is the same in principle. One whose debt is due, in the commercial world, must pay it instantly, or he becomes bankrupt. If instead of money he gives a bill or note, either on time or at sight, whether this is in form payment or collateral to his debt, he gains time and saves the disgrace and ruin consequent upon stopping payment. And in either case there is an implied undertaking that he shall wait upon his debtor till the result of the new security can be known, and in both cases where that proves unproductive. the creditor may pursue his original debt, or he may sue the prior parties on the new security. * * * According to the general commercial usage there is no essential difference in principle, whether a current note or bill is taken in payment of it as collateral security for a prior debt, provided the note is in both cases truly and unqualifiedly negotiated, so as to impose upon the holder the obligation to conform to the general law merchant in enforcing payment." In Percival v. Frampton, 2 Cromp., M. & R. 180, Parke, Baron says: "If the note was given to the plaintiff as a security for a previous debt, and they held it as such, they might be properly stated to be holders for a valuable consideration." In Palmer v. Richard, 1 Eng. Law & Eq. 529, it was held that it was not material whether the note or bill was deposited as security for an advance or in payment. In Poirier v. Morris, 20 Eng. Law & Eq. 112, Lord Campbell, C. J., in giving judgment says: "There is nothing to make a difference between this and a common case where a bill is taken as security for a debt, and in that case an antecedent debt is a sufficient consideration." In the same case, Crompton, J., says: "Whether the bill was a collateral security or whether it had the effect of suspending the judgment of the antecedent debt is quite immaterial." Such is regarded as the settled law in Eng-

land at the present day, and most of the states of the Union have virtually adopted the rule as laid down in Swift v. Tyson. In Georgia, Gibson v. Connor, 3 Kelly. 47, expressly decides that taking such paper as collateral security for a prior debt, is sufficient to shut out equitable defenses. See, also, Reddick v. Jones, 6 Ired. 107; Allaire v. Hartshorne, 1 Zab. [21 N. J. Law] 665; Chicopee Bank v. Chapin, 8 Metc. [Mass.] 40; 3 Kent. Comm. 96; Allen v. King [Case No. 226].

We think that we are justified by the authorities cited, in holding that whether or not Jewett & Sons received the bill in question in absolute discharge of their debt, or as a security merely, they are holders for value. Were they bona fide holders without notice? On this point there can be no doubt. It is true that they knew that Hone was an accommodation acceptor, but the paper was transferred to them to accomplish the very purpose Hone had in view in making the acceptance. They are now only calling upon Hone to do what he agreed to do when he put his name upon the bill. To say that because Hone received no consideration from Christol & Struthers for the acceptance, and that plaintiffs knew the fact, does not release Hone, for as we have seen, the plaintiffs took the bill for value. To hold that because Hone was an accommodation acceptor, and the plaintiffs knew it, therefore the bill is not good, would be to strike a fatal blow at all discounts of negotiable securities for preexisting debts. upon such a doctrine, what would become of that large class of cases where new notes are given by the same or other parties by way of renewal or security to banks, in lieu of old securities discounted by them, which have arrived at maturity?

We are of opinion, therefore, upon the whole case, that the evidence offered to sustain the defense can be of no avail, and we therefore sustain the motion to exclude it from the jury.