Mr. Justice WOODBURY
 

 delivered the opinion of the court.
 

 This was an action of assumpsit for money had and received; and also counting specially, that, on the I7th of November, 1836, the original defendant, Le Roy, in consideration of $ 1,800 then paid to him by the original plaintiff, Beard, caused to be made to the latter, at Milwaukie, Wisconsin, a conveyance, signed by Le Roy and his wife, Charlotte. This conveyance was of a certain lot of land situated in Milwaukie, and contained covenants that they were seized in fee of the lot, and had good right to convey the same. Whereas it was averred, that, in truth, they were not so seized, nor authorized to convey the premises, and that thereby Le Roy became liable to repay the $ 1,800.
 

 Under several instructions given by the Circuit Court for the Southern District of New York, where the suit was instituted, the jury found a verdict for the original plaintiff, on which judgment was rendered in his favor, and which the defendant now seeks to reverse by writ of error. Among those instructions, which were excepted to by the defendant, and are at this time to be considered, was, first, that
 
 “
 
 the action of assumpsit is properly brought in this court, upon the promises of the defendant contained in the deed, if any promises are made therein which are binding or obligatory on the defendant.”
 

 The conveyance in this case was made in the State of Wisconsin, and a scrawl or ink seal was affixed to it, rather than a seal of wax or wafer. By the law of that State, it is provided, that “ any instrument, to which the person making the same shall affix any device, by way of seal, shall be adjudged and held to be of the same force and obligation as if it were actually sealed.”
 

 But in the State of New York it has been repeatedly held (as in Warren
 
 v.
 
 Lynch, 5 Johns. 329) that, by its laws, such device, without a wafer or wax, are not to be deemed a seal, and that the proper form of action must be such as is practised on an unsealed instrument in the State where the suit is instituted, and the latter must therefore be assumpsit. 12 Johns. 198; 2 Hill, 544, 228; 3 Hill, 493; 1 Denio, 376; 5 Johns. 329; Andrews et al.
 
 v.
 
 Herriot, 4 Cowen, 508, overruling Meredith
 
 v.
 
 Hinsdale; 4 Kent, 451; 8 Peters, 362; Story’s Conflict of
 
 *465
 
 Laws, 47; 2 Caines, 362. A like doctrine prevails in some other States. 3 Gill & Johns. 234, Douglas et al.
 
 v.
 
 Oldham, 6 N. Hamp. 150.
 

 It becomes our duty, then, to consider the instruction given here, in an action brought in the Circuit Court in New York, as correct in relation to the form of the remedy. It was obliged to be in assumpsit in the State of New York, and one of the counts was special on the promise contained in the covenant. We hold this, too, without impairing at all the principle, that, in deciding on the obligation of the instrument as a contract, and not the remedy on it elsewhere, the law of Wisconsin, as the
 
 lex loci
 
 contractus, must govern. Robinson
 
 v.
 
 Campbell, 3 Wheat. 212.
 

 It is further objected here, that an eviction by elder and better title should have been averred in the declaration before a recovery can be had for a breach of warranty.
 

 But such averment is necessary only when the breach is of a covenant for quiet enjoyment, &c. 14 Johns. 48. Because, in a breach of the covenant of seizin, it is broken at the time of the conveyance if at all, and no eviction need be alleged. 4 Cranch, 421; 4 Kent’s Com. 474, note.
 

 Here it virtually appears that the original défendant was not seized. Little attempt is made to show that he was ; and the title, so far as disclosed in the evidence, could not have been in him or his grantors.
 

 It is likewise contended, that, if a covenant legally existed in this case, and was broken, assumpsit lies to recover back the money. That form of action seems at times justified on general principles, beside the rule that in New York the remedy must be assumpsit on an instrument like this. 9 Mees. & Wels. 54; 4 Man. & Grang. 11; 5 Adolph. & Ell. 433; 6 East, 241. To this the chief objection urged is, that neither assumpsit nor covenant will lie, in case no covenant whatever was made or broken. 3 Bos. & Pul. 170; 2 Johns. Ch. 515; 4 Kent, 474; 3 Ves. 235.
 

 But as the facts here do not require a decision on this last point, none is given.
 

 The next instruction to which the original defendant objected, and which is the chief and most difficult one that can properly be considered by us, under the present bill of exceptions, is, that the power of attorney by Le Roy and his wife to Starr,. their agent, was broad enough to confer upon him “ authority to give a deed of the land with covenant of warranty.”
 

 This power of attorney is given
 
 in extenso
 
 in the statement of the case. It appears from its contents, that Le Roy, after
 
 *466
 
 authorizing Starr to invest certain moneys in lands and real estate in some of the Western States and Territories of the United States, at the discretion of the said Starr, empowered him “ to contract for the sale of, and to sell, either in whole or in part, the lands and real' estate so purchased by the said Starr,” and “on such terms in all respects as the said Starr shall deem most advantageous.” Again, he was authorized to execute “ deeds of conveyance necessary for the full and perfect transfer of all our respective right, title,” &c., “as sufficiently in all respects as we ourselves could do personally in the premises,” “and generally, as the agent and attorney of the said Jacob Le Roy,” to sell “ on such terms in all respects as he may deem most eligible.”
 

 It would be difficult to select language stronger than this to justify the making of covenants without specifying them
 
 eo nomine.
 
 When this last is done, no question as to the extent of the power can arise, to be settled by any court. But when, as here, this last is not done, the extent of the power is to be settled by the language employed in the whole instrument, (4 Moore, 448,) aided by the situation of the parties and of the property, the usages of the country on such. subjects, the acts of the parties themselves, and any other circumstance having a legal bearing and throwing light on the question.
 

 That the language above quoted from the power of attorney is sufficient to cover the execution of such a covenant would seem naturally to be inferred, first, from its leaving the
 
 terms
 
 of the sale to be in all respects as Starr shall deem most advantageous. “ Terms ” is an expression applicable to the conveyances and covenants to be given, as much as to the amount of, and the time of paying, the consideration. Rogers
 
 v.
 
 Kneeland, 10 Wendell, 219. To prevent misconception, this wide discretion is reiterated. The covenants, or security as to the title, would be likely to be among the terms agreed on, as they would influence the trade essentially, and in a new and unsettled country must be the chief reliance of the purchaser.
 

 To strengthen this view, the agent was also enabled to execute conveyances to transfer the title “ as sufficiently in all respects as we ourselves could do personally in the premises.” And it is manifest, that inserting certain covenants which would run with the land might transfer the title in some events more perfectly than it would pass without them; and thatj if present “ personally/’ he could make such, covenants, and would be likely to if requested, unless an intention existed to sell- a defective title for a good one, and for the price of a good one. It is hardly to be presumed that any thing so censurable as this was contemplated;
 

 
 *467
 
 Again, his authority to sell, “ on such terms in all respects as he may deem most eligible,” might well be meant to extend to a term or condition to make covenants of seizin or warranty, as without such he might not be able to make an eligible sale, and obtain nearly so large a price.
 

 Now all these expressions, united in the same instrument, would
 
 prima fade,
 
 in common acceptation, seem designed to convey full powers to make covenants like these. And although a grant of powers is sometimes to be construed strictly, (Com. Dig.,
 
 Poiar,
 
 B. 1 and c. 6; 1 Bl. R. 283,) yet it does not seem fit to fritter it away in a case like this, by very nice and metaphysical distinctions, when the general tenor of the whole instrument is in favor of what was done under the power, and when the grantor has reaped the benefit of it, by receiving a large price that otherwise would probably never have been paid. Nind
 
 v.
 
 Marshall, 1 Brod. & Bingh. 319; 10 Wendell, 219, 252. This he must refund when the title fails, or be accessory to what seems fraudulent. 1 J. J. Marsh. 292. Another circumstance in support of the intent of the parties to the power of attorney to make it broad enough to cover warranties, is their position or situation as disclosed in the instrument itself, Solly
 
 v.
 
 Forbes, 4 Moore, 448. Le Roy resided in New York, and Starr was to act as his attorney in buying and selling lands in the “Western States and Territories,” and this very sale was as remote as Milwaukie, in Wisconsin. For aught which appears, Le Roy, Beard, and Starr were all strangers there, and the true title to the soil little known to them, and hence they would expect to be required to give warranties when selling, and would be likely to demand them when buying.
 

 The usages of this country are believed, also, to be very uniform to insert covenants in deeds. In the case of the Lessee of Clarke
 
 v.
 
 Courtney, 5 Peters, 349, Justice Story says,— “ This is the common course of conveyances ”; and that in them “covenants of title are usually inserted.” See also 6 Hill, 338." Now, if in this power of attorney no expression had been employed beyond giving an authority to sell and convey this land, saying nothing more extensive or more restrictive, there are cases which strongly sustain the doctrine, that, from usage as well as otherwise, a warranty by the agent was proper, and would be binding on the principal. '
 

 It is true, that some of these cases relate to personal estate, and some perhaps should be confined to agents whp have been long employed in a particular business, and derive their authority by parol, no less than by usage; and' consequently may not be decisive by analogy to the present case. 3 D. & E. 757;
 
 *468
 
 Helyear
 
 v.
 
 Hawke, 5 Es. Ca. 72, note; Pickering
 
 v.
 
 Bush, 15 East, 45; 2 Camp. N. P. 555; 6 Hill, 338; 4 D. & E. 177.
 

 So of some cases which relate to the quality, and not the title, of the property. Andrews
 
 v.
 
 Kneeland, 6 Cowen, 354; The Monte Allegre, 9 Wheat. 648; 6 Hill, 338.
 

 But where a power to sell or convey is given in writing, and not aided, as here, by language conferring a wide discretion; it still must be construe! as intending to confer all the usual means, or sanction the usual manner of performing what is intrusted to the agent. 10 Wendell, 218; Howard
 
 v.
 
 Baillie, 2 H. Bl. 618; Story on Agency, p. 58; Dawson
 
 v.
 
 Lawly, 5 Es. Ca. 65; Ekins
 
 v.
 
 Maclish, Ambler, 186; Salk. 283; Jeffrey
 
 v.
 
 Bigelow, 13 Wendell, 527; 6 Cowen, 359. Nor is the power confined merely to “usual modes and means,” but, whether the agency be special or general, the, attorney may use appropriate modes and reasonable modes; such are considered within the scope of his authority. 6 Hill, 338; 2 Pick. 345; Bell on Com. L. 410; 2 Kent’s Com. 618; Vanada
 
 v.
 
 Hopkins, 1 J. J. Marsh. 287; Sandford
 
 v.
 
 Handy, 23 Wendell, 268. We have already shown, that, under all the circumstances, a covenant of warranty here was not only usual, but appropriate and reasonable.
 

 Again, “ all powers conferred must be construed with a view to the design and object of them.” 1 J. J. Marsh. 287. Here that design was manifestly in the discretion of the agent, to sell as he might deem most advantageous. Again, if a construction be in some doubt, not only may usage be resorted to for explanation, (Story on Agency, p. 73; 5 D. & E. 564,) but the agent may do what seems from the instrument plausible and correct; and though it turn out in the end to be wrong, as understood by the principal, the latter is still bound by the conduct of the agent. Lomax
 
 v.
 
 Cartwright, 3 Wash. C. C. 151; 2 ib. 133; 4 ib. 551; 6 Cowen, 358, in Andrews
 
 v.
 
 Kneeland. Because the person who deals with the agent is required like him to look to the instrument to see the extent of the power (7 Barn. & Cres. 278; 1 Peters, 290); and if it be ambiguous, so as- to mislead them, the injurious consequences should fall on the principal, for not employing clearer terms. 2 Barn. & Ald. 143, in Baring
 
 v.
 
 Corrie; 1 Peters, 290; Courcier
 
 v.
 
 Ritter, 4 Wash. C. C. 551; 23 Wendell, 268.
 

 Ifi the next place, the acts of the parties themselves tend heie to strengthen the construction of the words in the power, so as to authorize a warranty, and these acts, it is competent to consider in order to remove doubt. 17 Pick. 222; 1 Metcalf, 378; Paley on Agency, 198; Mechanics’ Bank of Alexandria
 
 v.
 
 
 *469
 
 Bank of Columbia, 5 Wheat. 326; and Bac. Abr.
 
 Covenant,
 
 F.; 5 D. & E. 564; 1 Greenleaf on Ev. § 293.
 

 The agent’s acts on this subject are strong. He construed the instrument as if empowering him to make the warranty, and made it accordingly. He was to gain nothing for himself by such a course, if wrong, and does not appear to have done it collusively with any body. 2 Bro. Ch. 638.
 

 The principal, too, when asked for redress, and when corresponding on the subject, does not appear to have set up as a defence, that he did not intend, by this instrument, to authorize a conveyance with warranty. On the contrary, for some time he conducted himself towards both the agent and the plaintiff, as if he had meant covenants should be made. 14 Johns. 238; All Saints Church
 
 v.
 
 Lovett, 1 Hall, 191.
 

 Finally, the decided cases on this question, though in some respects contradictory, present conclusions as favorable to this construction, as do the peculiar language used in the power and the weight of analogy. See 23 Wendell, 260, 267, 268; Nelson
 
 v.
 
 Cowring, 6 Hill, 336; Vanada
 
 v.
 
 Hopkins’s Ad., 1 J. J. Marsh. 293; 13 Wendell, 521,
 
 Semble.
 

 Some earlier cases were contra. Nixon
 
 v.
 
 Hyserott, 5 Johns. 58; Van Eps
 
 v.
 
 Schenectady, 12 Johns. 436; and Ketchum
 
 v.
 
 Evertson, 13 Johns. 365; 7 Johns. 390.
 

 But in these the power was merely to give a deed of a certain piece of property, and could be construed as it was, without directly impugning our views here. Whereas, in the present case, the power was manifestly broader in terms and design. Wilson
 
 v.
 
 Troup, 2 Cowen, 195; 6 Cowen, 357.
 

 The earlier cases in New York, bearing on this subject, are also considered by its own courts as overruled by the later ones. Bronson, J., in 6 Hill, 336.
 

 It may be proper to add, that the general conclusions to which we have arrived are more satisfactory to us, if not more right, because they accord with what appears to be the justice of the case, which is, that the plaintiff should not keep money which .would probably not have been obtained except by these very covenants, and which it must be inequitable, therefore, to retain and at the same time avoid the covenants.
 

 The judgment below is affirmed.
 

 Mr. Justice McLEAN dissented.
 

 Order.
 

 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the South
 
 *470
 
 ern District of New York, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this Court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs, and damages at the rate of six per centum per annum.