# WILLARD, ADMINISTRATOR,

## *v.*

# WOOD.

EQUITY PRACTICE; EXECUTORS; MORTGAGES, ASSUMPTION OF BY PUR-
CHASERS OF LAND; CONTRACTS; STATUTE OF LIMITATIONS;
PRINCIPAL AND SURETY; ANCILLARY ADMINISTRATION;
ASSETS.

1. Where a bill in equity against two executors of an estate, is by order of complainant, dismissed as against the one who has been the active executor in the administration of the estate, such order operates to dismiss the bill as against the other.

2. No agreement by the grantee in a deed-poll to assume an existing mortgage on the land, constitutes in this District, a specialty obligation or covenant on his part; but has the effect of a simple contract only.

3. The statutory period of limitation applicable to actions on simple contracts in this District, applies to an action brought here upon a contract which has the effect of a specialty in the place where made, but which is a simple contract here.

4. If an equitable right or title is not sued upon during the time within which a legal right or title of the same nature ought to be sued upon to avoid the bar of the statute of limitations, equity will apply the statute by analogy and treat the right or claim as effectually barred.

5. The purchaser of land subject to a mortgage, who assumes payment thereof is, as between himself and his vendor, the principal debtor, while the liability of the vendor to the mortgagee, or his assignee, is that of surety.

6. And, by the application of a general principle of equity that a creditor may obtain the benefit of all collateral securities for the payment of the debt, which the surety for the principal debtor may hold for his indemnity, the mortgagee may avail himself of covenants or agreements of a subsequent purchaser of the mortgaged premises, who assumes the payment of the mortgage debt, such subsequent purchaser occupying the position of principal debtor as between himself and his grantor.

7. But the mortgagee, or his assignee, can have no greater right than the mortgagor had against the grantee, and if the right of the mortgagor against his grantee has become extinguished or barred, or in any manner released, the right of substitution is gone.

8. An obligation created by covenant of a non-resident, in a deed recorded and intended to operate in a foreign jurisdiction, is not a local asset of the estate of a decedent in the District of Columbia, for which an administrator acting under ancillary letters of administration granted here, can maintain an action.

No. 36.    Submitted June 9, 1893.—Decided September 5, 1893.

HEARING on bill and answer certified to the General Term of the Supreme Court of the District of Columbia to be heard in the first instance, and transferred to this court by operation of law. *Bill dismissed.*

STATEMENT of the case by the CHIEF JUSTICE:

This case comes into this court by transfer, under the statute, from the General Term of the Supreme Court of the District of Columbia, where it was pending as a first instance case on reference from special term.

To a full understanding of the case, and the questions involved, a particular statement of the facts is required. A part of the facts will be found set out in the case of *Willard* v. *Wood*, 135 U. S., 309, a case at law relating to the same subject-matter as the present, but to which Bryan, one of the defendants in this case, was not a party.

The bill in this case was filed on the 18th of July, 1881, by Willard as administrator of Frederick L. Christmas, deceased, against William W. W. Wood and Thomas B. Bryan, successive grantees of certain real estate situate in Kings County, in the State of New York, to enforce against them personally, by way of substitution, certain covenants or agreements made by them to pay off a certain mortgage debt encumbering the real estate conveyed to them successively. Wood, without delay, appeared to the bill and answered, but died in August, 1882, leaving a will whereby his widow and son were made his executors, and they voluntarily appeared to the case as defendants, in October, 1883. Bryan, the other defendant, being a citizen of the State of Colorado, as charged in the bill, was not served with process until some time in March, 1890, and he appeared and filed his answer on the 30th of April, 1890.

It is alleged in the bill that a certain Dixon, on the 7th of July, 1868, at Brooklyn, in the State of New York, executed and delivered to Charles Christmas, since deceased, a bond for the payment of $14,000 in five years, with interest, and a mortgage of real estate in Brooklyn to secure the payment of

the bond. Dixon, the mortgagor, on July 9th, 1869, by deed-poll, signed and sealed by himself only, in consideration of $17,000, conveyed the real estate in fee to William W. W. Wood, subject, however, to the mortgage to Christmas, "which said mortgage with the interest due and to grow due thereon, the party of the second part hereby assumes and covenants to pay, satisfy and discharge, the amount thereof forming a part of the consideration herein expressed, and having been deducted therefrom." But, as we have said, this deed was not signed or sealed by Wood. He, however, entered upon and took possession of the property, and subsequently made two payments of $2000 each, one in 1873, and the other in February, 1874, on account of the principal of the mortgage debt, and also regularly paid the interest thereon until March 14, 1874, when he conveyed the real estate to Thomas B. Bryan, one of the defendants, by deed of that date, in which it was recited that the balance due on the mortgage debt formed a part of the consideration, and was deducted from the purchase money; and with respect to this balance, it is expressly declared that "the said Thomas B. Bryan hereby assumes and expressly agrees to pay said balance, with the interest at 7 per cent., he signing this deed in evidence of his said covenant." He did, accordingly, sign and seal the deed. Both of these deeds, that from Dixon to Wood, and that from Wood to Bryan, were duly recorded in the registry of deeds for Kings County, New York.

It also appears that the bond and mortgage were duly assigned to Frederick L. Christmas, and were held by him until his death in 1876. He lived and died in the State of New York; and, upon his death, administration upon his estate was duly had and executed in that State. Some time after his death, proceedings were taken by his administrators in a court of competent jurisdiction in New York, for the foreclosure of the mortgage, and a decree was made for the sale of the mortgaged property, but to which proceedings neither Wood nor Bryan was a party, and on December 10, 1877, after alleged notice to Wood and Bryan, the property

was sold and bought in for the plaintiffs in the foreclosure proceedings. On January 5, 1878, the net amount of the proceeds of sale, being the sum of $4566.61, was applied to the payment of the mortgage debt; and on April 18, 1879, an order was made by the court, giving leave to the administrator to sue either Wood or Bryan for the deficiency, amounting to $6865.63. There were several apparent irregularities in these foreclosure proceedings, referred to in the argument for the defendant, but, in the view we have of the matter, they are not regarded as material in this case. It also appears that Dixon became a bankrupt, and during the pendency of the foreclosure proceedings was duly discharged in bankruptcy by the District Court of the United States for the eastern district of New York, March 1, 1878, and that he died a few days thereafter.

In October, 1880, the present plaintiff took out ancillary letters of administration on the estate of Frederick L. Christmas in this District, and thereafter commenced proceedings both at law and in equity—at law as against Wood, and against both Wood and Bryan in equity. The proceedings at law failed, and as the only supposed feasible remedy remaining, the plaintiff prosecutes this proceeding in equity.

The bill of the plaintiff sets forth the principal facts that we have stated, and it prays for answers under oath by the defendants. It also prays that both Wood and Bryan shall be decreed to pay the balance due on the mortgage, and for general relief.

Wood, by his answer, denied that he was bound as by covenant in the deed from Dixon, but that, at most, he could only be bound as upon parol or simple contract not under seal. He also pleaded and relied upon the defenses of the Statute of Limitations, the lapse of time, and *laches* of the plaintiff. He further pleaded and insisted that before the filing of this bill, he had been sued and impleaded at law by the plaintiff, for and in respect of the same subject-matter as that made the foundation or cause of action in the present suit, and that such action at law was still pending, and he

insisted that the plaintiff should be put to his election, and not be allowed to prosecute both suits.

Bryan, in his answer, does not admit the right or authority of the plaintiff as administrator of Frederick L. Christmas, to maintain this suit against him. He denies the right of the plaintiff to compel him to pay any balance due upon the mortgage. He also insists upon the defenses made by Wood in his answer as inuring to his, Bryan's, benefit and exoneration. He also avers that after the death of Wood, his widow, the executrix of his will, was sued at law by the plaintiff as administrator, for the identical cause of action as that set forth in the present bill; and that thereafter, on or about the 5th of January, 1885, the plaintiff caused the present bill to be dismissed as to said executrix, and thereafter prosecuted the suit at law against her, which resulted in a judgment for the defendant therein. He also avers that his covenant in respect to the mortgage debt was made with and for the protection and indemnity of Wood alone; that said Wood was not liable, at the time of the institution of this suit, nor is his estate in anywise liable, for the balance of the mortgage debt; and as the liability of said Wood and his estate had ceased and become barred before the bringing of this suit, there is no liability on the part of the defendant Bryan, by reason of his covenant, that is available to the plaintiff by way of substitution to the rights of Wood, the covenantee.

It is shown in proof that on the 5th of January, 1885, the attorney for the plaintiff filed in this cause a paper or order in the following terms: "And now comes the said complainant and dismisses his said bill so far as the same relates to the defendant, Mary L. C. Wood, executrix, but without prejudice. The clerk will please make the entry in the docket accordingly." And on the same day the clerk made this entry on the docket, to wit: "Dismissal of bill as to Mary L. C. Wood, ex'r. Order by complainant filed." Mrs. Wood, the executrix, died during the pendency of the cause of *Willard* v. *Wood*, 135 U. S., 309, in the Supreme Court, and Thomas N. Wood, the son, remained the surviv-

ing executor of his father's will, though it appears that he took no active part in the administration of the estate during the life of his mother, and was not made a party as co-defendant in the case of *Willard* v. *Wood,* just referred to.

*Mr. Enoch Totten* for the complainant:

1. The estate of William W. W. Wood, deceased, is liable notwithstanding the lapse of time. The contract sued upon is a New York contract and is governed by the laws of New York. It is settled by the courts in New York that the statute of limitations applicable to simple contracts, does not bar such an agreement as that made by Wood with Dixon by accepting the deed and entering into possession.

It is a principle too firmly established to admit of dispute at this day, that to the law of the State in which land is situated must we look for the rules which govern its descent, alienation and transfer, and for the effect and construction of conveyances. *McGoon* v. *Scales,* 9 Wall., 27; *Orvis* v. *Powell,* 98 U. S., 176; *Brine* v. *Ins. Co.,* 96 U. S., 627; *Norton* v. *Pritchard,* 106 U. S., 129; *Gebhart* v. *R. R. Co.,* 109 U. S., 527; *Dennick* v. *R. R. Co.,* 103 U. S., 11. By the law of the State of New York, a purchaser of mortgaged real estate who accepts a deed thereto, by the terms of which he assumes, covenants, and agrees to pay the mortgage as a part of the purchase money, is liable for the amount of the incumbrance, and his liability is precisely the same, whether he actually signs and seals the deed or not. He is bound by the covenants in the instrument in either case, and an action at law may be maintained on the contract by the mortgagee. *Trotter* v. *Hughes,* 12 N. Y., 74; *Burr* v. *Beers,* 24 N. Y., 178; *Thorp* v. *Keokuk,* 48 N. Y., 257; *Hand* v. *Kennedy,* 83 N. Y., 149; *Atlantic Dock Co.* v. *Leavit,* 54 N. Y., 35; *Vrooman* v. *Turner,* 69 N. Y., 280; *Bowen* v. *Beck,* 94 N. Y., 86. The precise question involved here was decided by the Court of Appeals of New York, in *Bowen* v. *Beck,* 94 N. Y., 86. The purchaser who assumed the mortgage debt in that case did not sign the deed, but

accepted it and its benefits; the deed purported, as here, to be a deed of "indenture," and the statute of limitations was pleaded; that statute as applicable to *simple contracts* barred the action, but as applicable to a *specialty* it did not. That case was in all respects undistinguishable from this, and the court held that the statute was not a defense. If this action were pending in New York it would clearly be controlled by that case. See also *Hoff's Appeal*, 24 Pa. St., 200. The Supreme Court in the opinion in *Willard* v. *Wood*, 135 U. S. 309, expressly declined to pass upon this question, although it was argued at length at the bar.

2. The estate of Wood is liable, notwithstanding the order of counsel to dismiss the bill filed January 5, 1885. The dismissal of a bill in equity as to one of two executors is inoperative. Executors are joint tenants and not tenants in common. An equity suit against one of two executors would support a judgment or decree binding on the estate, if no objection were made or want of parties suggested by the defendant. The plaintiff in an equity suit cannot dismiss his bill, except by means of an order of the court. Without such an order the paper signed by counsel in this case was inoperative. 1 Daniel's Ch. Pr., 795; *Fisher* v. *Quick*, 1 Stockton, 312, N. J. Eq. The defendant Bryan is liable in his covenant, and the remedy in this District is in equity. *Willard* v. *Wood*, 135 U. S., 309; *Keller* v. *Ashford*, 133 U. S., 610; *Shepherd* v. *May*, 115 U. S., 305; *Union Life Ins. Co.* v. *Hanford*, 143 U. S., 190. The plaintiff is entitled to a decree against Thomas N. Wood, as surviving executor of the will of William W. W. Wood, deceased, and against Thomas B. Bryan, personally, for the balance due of the mortgage debt, with interest.

*Mr. John Sidney Webb* appeared for the estate of Wood, but filed no brief.

*Mr. John Selden* for the defendant *Bryan :*

1. The complainant cannot maintain this suit, having acquired no title to or interest in the bond from Dixon to

Charles Christmas, merely from his appointment as administrator in this District of Frederick L. Christmas. Simple contracts, although evidenced by negotiable paper, are *bona notabilia* where the debtors reside, *Wyman* v. *Halstead*, 109 U. S., 656 ; *Ins. Co.* v. *Woodworth*, 111 Id., 145-6 ; and, as expressly set up in the present bill, the defendant Bryan is a resident of Colorado. Instruments under seal are *bona notabilia* where they shall be found at the time of the death of the intestate. *Daniel* v. *Luker*, Dyer, 305 a ; *Byron* v. *Byron*, Cro. Eliz., 472; Acc. Anon., 8 Mod., 244-5; 1 Roll. Abr., 908 ; *King* v. *Sutton*, 1 Wm. Saund. Rep., (5th Am. ed.), 274 ; *Att'y General* v. *Bouwens*, 4 Mees. and Wels. (Exch.), 191 ; S. C. 1 Horn and Hurl. (Exch.), 324; Acc. 1 Wms. Ex. (6th Am. ed.), 622-3, note j ; *Mondel* v. *Steele*, 1 Dowl. Pract. Cas. N. S., 167 ; *Slocum* v. *Sanford*, 2 Conn., 534; *Holcomb* v. *Phelps*, 22 Id., 135-6 ; *Taylor* v. *Barron*, 35 N. H., 495 ; Schouler Ex. and Admr., Sec. 24 ; 1 Woerner Admr., 440-41 ; 2 Id., 650 ; *Beers* v. *Shannon*, 73 N. Y., 289 ; *Smith, Admr.,* v. *Union Bank of Georgetown*, 5 Pet., 525 ; *Noonan* v. *Bradley*, 9 Wall., 405. The bond and the mortgage at the death of Frederick L. Christmas were then at his domicile in New York. A release of the bond by the administrator appointed in this District would constitute no bar to the enforcement of the bond by the administrator appointed in Brooklyn. Between these administrators there exists no privity. *Stacy* v. *Thrasher*, 6 How., 44, 58, 60 ; *Hill* v. *Tucker*, 13 Id., 467 ; *McLean* v. *Meek*, 18 Id., 18 ; *Johnson* v. *Powers*, 139 U. S., 159. If the bill in the present case should be dismissed as to Bryan with costs, the administrator in Brooklyn would neither be liable for such costs nor disabled from instituting a new and like suit against Bryan. And if Willard should recover against Bryan in the present suit Bryan would still be exposed to a second recovery at the suit of the administrator at Brooklyn, or his assignee, as lawful holder of the bond.

2. The bond, though it constitutes the foundation of the suit, has been neither produced nor properly accounted for.

No effort has been made by complainant to discover it; it is not affirmed that it is lost, nor that any inquiry has been made concerning it of the administrator in Brooklyn. The complainant, therefore, has not shown "that he has in good faith exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest, and which are accessible to him." *Simpson* v. *Dall*, 3 Wall., 475 ; Greenl. Ev., Sec. 558. As Bryan may be liable upon the instrument to some *bona fide* holder thereof, by or under assignment from the Brooklyn administrator, the non-production of the instrument cannot be excused under settled principles. Though the bond was *bona notabilia* in New York, was within the jurisdiction of that State and subject to the laws thereof, the leave required by those laws, to institute proceedings upon the bond against Wood and Bryan was not obtained.

3. The personal representative of the assignee of the mortgagee is without remedy, in equity, against the defendant Bryan. As the title of Frederick L. Christmas to the mortgage debt was acquired under the will, and upon a division of the estate of his father, Charles Christmas, the mortgagee, the son was but a volunteer, possessing no higher equity than his ancestor. The bond and mortgage were executed on July 7, 1868; the conveyance of the mortgaged premises to Wood and his assumption of the mortgage debt took place April 19, 1869; and the mortgage debt was assumed by Bryan March 17, 1874, after its maturity. Hence the mortgage was not executed, nor the mortgage debt created, in reliance upon the subsidiary engagements of Wood or of Bryan. *Ewell* v. *Daggs*, 108 U. S., 142. These engagements "the mortgagee had no part in obtaining and paid no consideration for." *Drury* v. *Hayden*, 111 U. S., 227. Technical principles establish no liability on the part of Bryan to the estate of Frederick L. Christmas. 1 Jones Mort. (4th ed.), Secs. 440-470 ; *Keller* v. *Ashford*, 133 U. S., 610, 624-5 ; *Willard* v. *Wood*, 135 Id. 309, 313-14. Under these decisions the relations at law, between Dixon

and Wood, and between the latter and Bryan, become eliminated from the controversy. By these decisions, the law upon the subject to which they relate, is placed *super vias antiquas*. No relation of debtor and creditor exists between the mortgagor and mortgagee, for Dixon's estate was, on March 1, 1878, discharged in bankruptcy from all debts and claims provable on December 7, 1877, including the mortgage debt due to Charles H. Christmas as principal administrator of Frederick L. Christmas. If, notwithstanding such proof of the mortgage debt in bankruptcy, a judgment for any deficiency was obtained against Dixon by the plaintiff in foreclosure " it was obtained under circumstances which amounted to a fraud in law." *Scott* v. *Ellery*, 142 U. S., 385.

The assignee in bankruptcy of Dixon would have been protected by the limitation of two years contained in R. S. U. S., Sec. 5057. *Baily* v. *Glover*, 21 Wall., 342. It is a necessary feature in the doctrine of subrogation that " the creditor cannot claim the security, unless the surety had a right to come upon it "—that " his rights can rise no higher than that of the surety through whom he claims, and will be subject to any defense that would have been valid against the latter." 1 Ld. Cas. Eq., pt. I (4th Am. ed.), 174-5. In the case of the mortgagee, " the equity on which his relief depends, is the right of the mortgagor against his vendee, to which he is permitted to succeed by substituting himself *in the place of the mortgagor*." *Keller* v. *Ashford*, 133 U. S., 625. And where the mortgagee has neither acted upon, nor become in anywise party to, the agreement made between the mortgagor and his vendee, " such a mortgagee has no greater right than the mortgagor has against the grantee." Id. " He stands in his debtor's shoes, and is substituted to the rights and remedies of the latter, but to nothing else." *Willard* v. *Wortham*, 76 Va., 402 ; *Osborne* v. *Cabell et als.*, 77 Id., 468. " He can, therefore, only have a personal judgment against the purchaser, for his debt, when the mortgagor holds an obligation which will support such a judg-

ment." *Crowell* v. *Currier*, 12 E. C. Green, (27 N. J. Eq.), 155; 17 Am. Law. Reg., N. S., 412; *Crowell* v. *Hospital of Saint Barnabas*, 12 E. C. Green, (27 N. J. Eq.), 656-657; Acc: *Bull* v. *Titsworth*, 2 Stew., Eq., (29 N. J. Eq.), 73, 74. Hence, it is held, that if the cause of action of the mortgagor against his vendee, be barred by the statute of limitations, the remedy of the mortgagee against the vendee will be likewise barred. "The mortgagee can only be subrogated to an existing remedy of his debtor, the mortgagor, upon a legal, existing stipulation." *Biddel* v. *Brizzolara*, 64 Cal., 361. As the mortgagee, in order to be subrogated to the rights of the mortgagor against the first vendee, must be creditor of the mortgagor, so, the mortgagor, in order to be subrogated to the rights of the first vendee against the second, must be a creditor of the immediate vendee of the mortgagor. Upon each alienation, the vendee becomes bound as principal, and the vendor as surety, as between themselves, in equity, for payment of the mortgage debt. 1 Jones Mort., 741, sec. 755 (4th ed.).

The CHIEF JUSTICE delivered the opinion of the Court:

Upon the statement of this case, the following questions arise:

1st. Whether the bill was not effectually dismissed as to the estate of Wood by the order of the 5th of January, 1885? If not—

2d. Whether the right, if any, attempted to be enforced against the estate of Wood, by reason of the assumption in favor of Dixon, was not fully and completely barred by the Statute of Limitations, or the lapse of time, before the bringing of this suit. And if the right of the plaintiff as against the estate of Wood was either released or barred,

3d. Whether there can be, upon settled principle, any substitution of the plaintiff, as the representative of the mortgagee, to the position of Wood, with the right to enforce the covenant of Bryan made with and for the benefit of Wood? And—

4th. Whether, on the facts of this case, the covenant of

Bryan in the deed from Wood, if it can be availed of at all, constitutes property or assets located in this District, belong-ing to the estate of the plaintiff's intestate, for which Bryan, a non-resident, can be sued here.

1. With respect to the first of these questions, we entertain no doubt that it was the intention of the plaintiff, by the order of the 5th of January, 1885, to dismiss the bill as to. the representative of Wood's estate, and that it was supposed at the time to have been effectually done. For this there was obvious reason. There was an action at law pending against the representative of that estate, in respect to the same sub-ject-matter, and Wood, in his answer, had raised the ques-tion of the right of the plaintiff to pursue both remedies. The dismissal of the bill, therefore, was but a concession to the right and demand of Wood that the plaintiff should elect as between the two suits that were being simultaneously pur-sued in regard to the same subject-matter.

It is doubtless a general rule, as laid down in the books of equity practice, that the plaintiff may, as matter of course, dismiss his bill at any time before decree, upon payment of costs. The matter is within the control of the court, it is true, but that is for the protection of the defendant. 2 Dan. Ch. Pr., 928, 929. Here the defendant had demanded that the plaintiff should elect to dismiss either the bill in equity or the action at law, and therefore it is not to be supposed that either he or his representative would object to the dis-missal, except perhaps, as to costs; but the costs are within the control of the court, and may be directed to be taxed against the plaintiff and that he pay them. As we have said, the plaintiff certainly intended to dismiss the bill as to the estate of Wood; and it has been held that after a voluntary dismissal of a bill by the plaintiff, he will not be allowed to reinstate it, unless it be shown that there was surprise or mis-take. *Orphan Asylum* v. *M'Cartee*, 1 Hopk., 372.

It is urged, however, that the bill was only dismissed as against one of the executors of Wood, and that there still remained the son, the co-executor, against whom the bill

could be prosecuted. But we do not think that that is the fair construction of the order of dismissal, or that such was the object intended to be accomplished by it. It is quite true, a bill may be dismissed as against one defendant, without being dismissed against the others; but that general rule does not apply to co-executors or administrators who are joint defendants. In regard to them, where there are several executors or administrators the general rule is, they must all be sued, though some of them be infants. Therefore, a plaintiff cannot, either as creditor or residuary legatee, bring a bill in equity against one co-executor only. It is said, however, in qualification of this general rule, that it is only necessary to sue so many of the executors or administrators as have acted; that this is sufficient at law and should be equally so in a court of equity. 2 Wms. on Exrs. (4th ed.), p. 1724. Here Mrs. Wood alone was the active executrix, in the administration of her husband's estate, and the son, though joined with her in the will as an executor, had not, by reason of the fact of his absence, as may be supposed, taken any active part in the administration; and it was only after the death of his mother that he became active in the administration. The bill was dismissed, therefore, against the only active representative of the estate, and even upon the theory that it was the intention to retain the bill as against the son, it would have been left fatally defective for want of the active representative of the estate, as co-defendant, who had been voluntarily dismissed from it. In our opinion the bill was effectually dismissed as against the estate of Wood.

2. But even if the question just considered was supposed to be doubtful, we think there can be no doubt in regard to the second question; that is, as to the bar of the Statute of Limitations of the right asserted by the plaintiff against the estate of Wood.

In the case of *Willard* v. *Wood*, 135 U. S., 309, the question whether an agreement or assumption recited in a deed to pay an existing mortgage on the land by the grantee in the

deed, the deed being signed and sealed by the grantor alone, could be treated as being in the nature of a covenant under seal, and consequently a specialty obligation of the grantee, under the law of this District, the Supreme Court found it unnecessary to decide. There is no doubt, however, that, according to the settled doctrine of the courts of New York, and of some one or two other States, such unsigned and unsealed assumption to pay in a deed accepted by the grantee would be regarded as a covenant and a specialty, and an action of covenant could be maintained thereon, and the Statute of Limitations would only apply as to a specialty under seal. This is clearly shown by the cases referred to in the opinion of the Supreme Court in *Willard* v. *Wood,* and was so positively ruled in the case of *Bowen* v. *Beck,* 94 N. Y., 86. But in the District of Columbia, the common law prevails, except as it may have been changed or modified by statute. The terms *specialty* and *covenant,* as employed in the Statute of Limitations in force in this District, have well defined significations at the common law, and instruments or obligations embraced within the definition of those terms, have peculiar characteristics and incidents that distinguish them from other written obligations. It is, therefore, clear that, according to the priniciples of the common law, no mere agreement or assumption to pay, by a grantee in a deed, neither signed nor sealed by him, can be deemed or treated as a specialty or covenant, in this District. This, as we understand the argument on the part of the plaintiff, is not controverted, but it is contended that inasmuch as such assumption clause in the deed accepted by the grantee constitutes and is a specialty or covenant according to the laws of New York, where the deed was intended to operate, that this quality of the assumption, imputed to it by the laws of New York, constitutes a part of its nature and obligation, and therefore it ought, here and everywhere else, upon principles of international jurisprudence, to have accorded to it like validity, operation and effect.

This precise question was presented and fully considered in the well known and familiar case of the *Bank of the*

*United States* v. *Donnally*, 8 Pet., 361. In that case the action was brought in a court of Virginia on a promissory note made in Kentucky, *not under seal,* but which, by the law of Kentucky, was declared to be and to have the effect of a *specialty.* The Statute of Limitations of Virginia was pleaded in bar, and the principal question was, whether the statutory bar applicable to an action on a promissory note as a simple contract constituted a bar to the action or not; and it was held that it did. Mr. Justice Story delivered the opinion of the court, and in the course of which he said:

" The general principle adopted by civilized nations is, that the nature, validity and interpretation of contracts are to be governed by the laws of the country where the contracts are made or are to be performed. But the remedies are to be governed by the laws of the country where the suit is brought; or as it is compendiously expressed, by the *lex fori.* No one will pretend that because an action of covenant will lie in Kentucky on an unsealed contract made in that State, therefore a like action will lie in another State where covenant can be brought only on a contract under seal. It is an appropriate part of the remedy, which every State prescribes to its own tribunals, in the same manner in which it prescribes the times within which all suits must be brought. The nature, validity and interpretation of the contract may be admitted to be the same in both States; but the mode by which the remedy is to be pursued, and the time within which it is to be brought, may essentially differ. The remedy, in Virginia, must be sought within the time, and in the mode, and according to the descriptive character of the instrument, known to the laws of Virginia, and not by the description and character of it prescribed in another State. An instrument may be negotiable in one State, which yet may be incapable of negotiability by the laws of another State; and the remedy must be in the courts of the latter on such instrument according to its own laws." And the learned judge concluded by declaring, that, conceding the promissory note sued on to be a specialty by the laws of

Kentucky, still it did not help the case, " unless it were also a specialty, and recognized as such by the laws of Virginia; for the laws of the latter must govern as to the limitation of suits in its own courts, and as to the interpretation of the meaning of the words used in its own statutes."

The opinion of the court was fortified by the citation, with approval, of the cases of *Warren* v. *Lynch*, 5 Johns., 239; *Andrews* v. *Herriot*, 4 Cow., 508; *Trasher* v. *Everhart*, 3 Gill & J., 234. And the doctrine of the case has been uniformly adhered to, without question, in all the subsequent cases occurring in the Supreme Court, in which like questions have arisen. *Wilcox* v. *Hunt*, 13 Pet., 378; *Le Roy* v. *Beard*, 8 How., 451; *Pritchard* v. *Norton*, 106 U. S., 124–133; cases referred to in the opinion of the court in *Willard* v. *Wood, supra.*

It is clear, then, both upon principle and authority, that the assumption to pay the pre-existing mortgage on the land by the grantee, contained in the deed from Dixon to Wood, but not signed or sealed by the latter, cannot be deemed to be a specialty in this *forum*, and so to avoid the operation of the Statute of Limitations pleaded as a bar to the enforcement of a simple contract; but that assumption to pay, founded upon the acceptance of the deed by the grantee, was good as a simple contract, and that provision of the Statute of Limitations of Maryland of 1715, Ch. 23, in force in this District, which declares that all actions on simple contracts shall be brought within three years after the right of action accrued, and not after, applies to this contract of assumption to pay; and if this were an action at law on such contract, the statute would, on the undisputed facts of this case, constitute a complete bar to the right to recover. But this is a proceeding in equity. The principle, however, is too well established to admit of controversy, that the Statute of Limitations is no less a bar to relief in equity than it is to a recovery at law. It is true, in matters of mere equitable rights or titles, courts of equity apply the statute simply by way of analogy to its application at law to legal rights or

titles of the same nature. But if the equitable right or title be not sued upon, within the time within which a legal right or title of the same nature ought to be sued upon to prevent the bar of the statute, the court applies the statute by analogy, and treats the right or claim as effectually barred. This principle is too firmly settled to need the citation of authorities for its support. And it follows that the right or claim of the plaintiff, as administrator, asserted against the estate of Wood, is completely barred.

3. Then, as to the liability of Bryan in respect to his covenant to pay, in the deed from Wood. The question whether such a liability exists depends upon the right of the plaintiff, as administrator of the assignee of the bond and mortgage, to be substituted to the right of Wood as against Bryan on the covenant of the latter. As we have seen, Dixon was a discharged bankrupt, and died in March, 1878, and there is no representative of his before the court. The covenant to pay the mortgage, in the deed from Wood to Bryan, creates no direct obligation on the part of Bryan to the mortgagee or his assignee; it is a contract between the vendor and vendee only, and over which the mortgagee has no control. It is, however, a settled principle that the purchaser of land subject to a mortgage, who assumes and agrees to pay the mortgage debt, becomes, in the contemplation of a court of equity, as between himself and *his* immediate vendor, the principal debtor, and the liability of the vendor, as between the parties to the contract, is that of surety. If the vendor pays the mortgage debt he may sue his vendee at law for the money so paid. *Keller* v. *Ashford*, 133 U. S., 624. And, by the application of a general principle of equity, that a creditor may obtain the benefit of all collateral securities, for the payment of the debt, which the surety for the principal debtor may hold for his indemnity, the mortgagee has been allowed to avail himself of covenants or agreements of a subsequent purchaser of the mortgaged premises, assuming the payment of the mortgage debt—such subsequent purchaser occupying the position of principal debtor *as between himself and his grantor*.

But, in applying this principle of equity in a case of this character, the decisions hold that " the right of a mortgagee to this remedy does not result from any fixed or vested right in him, arising either from the acceptance by the subsequent purchaser of the conveyances of the mortgaged premises, or from the obligation of the grantee to pay the mortgage debt as between himself and his grantor. Though the assumption of the mortgage debt by the subsequent purchaser is absolute and unqualified in the deed of conveyance, it will be controlled by a collateral contract made between him and his grantor, which is not embodied in the deed. And it will not *in any case* be available to the mortgagee, unless the *grantor was himself personally liable for the payment of the mortgage debt."* " The equity on which the mortgagee's relief depends is the right of the mortgagor against his vendee, to which he, the mortgagee, is permitted to succeed by substituting himself in the place of the mortgagor." *Keller* v. *Ashford, supra;* *Crowell* v. *St. Barnabas Hospital,* 12 C. E. Green, 650, 655. It would seem, therefore, to be clear, the mortgagee or his assignee can have no greater right than the mortgagor had against the grantee, and if the right of the mortgagor as against his grantee has become extinguished or barred, or in any manner released, the right of substitution is gone. The mortgagee or his assignee can claim no rights superior to those of the party occupying the position of surety, the mortgagor, through whom he claims, and he is subject to any defenses that would be valid as against the claim of the mortgagor. 1 Eq. L. Cas. (Pt. I), 174, 175.

Now, as we have seen, the assumption to pay by Wood, the grantee of Dixon, the mortgagor, was by simple contract, and that contract had become subject to the bar of the Statute of Limitations before this suit was brought; and the defense of the statute invoked by Wood, was not only available to him, but to Bryan also, who was a succeeding grantee to Wood. Wood and his estate being discharged from the contract to pay the mortgage debt, his representatives could

not recover on the covenant of Bryan, as for indemnity, and as the mortgagee or his assignee can have no better right than either Dixon or Wood, it follows that he has no enforceable claim against Bryan.

4. But even supposing the right of substitution existed as against Bryan in favor of the mortgagee or his assignee, would the plaintiff, as administrator of the assignee, have the right to sue Bryan in this jurisdiction? Bryan is sued here as a citizen of the State of Colorado, and the bill was pending nearly nine years before process was served, and was then served upon an occasion when Bryan happened to be in this District on business. The plaintiff sues by virtue of letters of administration granted to him in this District, upon the personal estate of Frederick L. Christmas, deceased. These letters of administration were ancillary to the main or domiciliary administration of the deceased, in the State of New York. To authorize the grant of such ancillary administration here, it was necessary to show that some " considerable part of the party's personal estate " was found here, or was reasonably supposed to lie here. Act of Md. of 1798, Ch. 101, Subch. 5, Sec. 2. This ancillary administration only extends to the assets of the intestate within this District, and all the authority given to the administrator is over the assets found existing in this jurisdiction, and not over assets existing elsewhere. *Doolittle* v. *Lewis*, 7 John. Ch., 45, 47; *Boston* v. *Boylston*, 2 Mass., 384; Story, Confl. of Laws, Secs. 514 b, 515. Whether, then, the obligation by covenant of Bryan, a citizen and resident of the State of Colorado, in a deed recorded and intended to operate in the State of New York, can be deemed to be a local asset of the estate of the deceased in this District, which vested in the administrator here, and entitled him to sue therefor, is a question that would seem to admit of but one answer, and that is in the negative. Not only is the covenant of Bryan, in respect of which he is sought to be held liable here, not found in this District, but the bond and mortgage, in respect to which the claim of the plaintiff is founded, are *bona notabilia* of the estate of the deceased in New York, and are not

assets to be administered in this jurisdiction. See upon this subject the cases of *Smith* v. *Union Bank of Georgetown*, 5 Pet., 525 ; and *Noonan* v. *Bradley*, 9 Wall., 405.

Being of opinion that there is no ground for the relief prayed, we shall 'dismiss the bill of the plaintiff with costs to the defendant.

*Bill dismissed.*