# WHITTEMORE *v.* DARDEN.

REAL ESTATE, CONTRACT FOR SALE OF; DEFECTIVE TITLE; QUIT
  CLAIM DEEDS; NOTICE TO VENDEE; DEPOSIT ON PURCHASE
  MONEY; RIGHT OF VENDEE TO RECOVER.

1. Where a title company employed by a vendee to examine the title
  to real estate which he has contracted to purchase reports the
  title defective because of the insufficiency of certain acknowl-
  edgments, and the vendor, while maintaining that the examiner
  is mistaken, agrees to procure quit claim deeds to cure the
  alleged defects, such agreement on his part is a virtual acqui-
  escence in the vendee's position as to the state of the title and
  relieves the latter from the obligation of completing the pur-
  chase within the time limited by the contract, and makes such
  completion practically dependent upon the procurement of
  the quit claim deeds.
2. In such case, it is the duty of the vendor, upon procuring the quit
  claim deeds, to inform the vendee of the fact, and thereby fix
  the liability of the latter under the contract.
3. And where, instead of giving such notice, the vendor retains the
  quit claim deeds in his own possession or under his control,
  and thereafter, without notice to the vendee, sells the property
  to another person, the vendee will be entitled to recover back
  money paid by him at the time of entering into the contract
  as a deposit to be credited upon the purchase money.

No. 588. Submitted October 22, 1896. Decided November 17, 1896.

HEARING on an appeal by defendant from a judgment on a verdict directed by the court in an action to recover money paid as a deposit to be credited upon the purchase price of certain real estate. *Affirmed.*

The COURT in its opinion stated the case as follows:

The appellee, Thomas Darden, who was plaintiff in the court below, contracted to purchase from the appellant, William C. Whittemore, an undivided one-sixth interest in certain land in the District of Columbia, known as Malvern Park, for the sum of $6,000, subject to a certain mortgage thereon. One-half of the purchase money was to be paid in cash, and the other half at or before the end of a year, for which a note was to be given to be deposited in bank; and to it was to be attached the appellant's deed of transfer of the property to be delivered on the payment of the note. It was specified in the contract that the property was sold "as a good title;" that the purchaser was to make a full settlement in twenty days; and that conveyancing should be at the cost of the purchaser. At the time of the execution of the contract (October 5, 1893), which was made by the appellee with the appellant's agent, and not directly with the appellant himself, the sum of $500 was paid by the appellee as a deposit to be credited upon the purchase money.

The appellee proceeded to have the title to the property examined by one of the title companies in the city of Washington, the president of which, on October 25, 1893, certified that the title to part of the property was good, but that the title to the other part was defective. This result was immediately communicated by the appellee to the appellant's agent, with whom the contract had been made; and the appellee demanded from the latter the return of his money. The agent replied that the title company was mistaken and that the matter would be arranged. The principal defect complained of as existing in the title, besides one which was afterwards eliminated by some explanation, was the alleged insufficiency of the acknowledgments made by two married women to the execution of deeds by them conveying certain interests in the property in question.

Some negotiations ensued between the appellant's agent and the president of the title company, and also between the latter and the president of another title company, who acted also in the premises on behalf of the appellant, and who seems to have previously examined the title for the appellant and to have found it satisfactory. As the result of these negotiations, which seem to have been all conducted with the knowledge and consent of the appellant, it was resolved to attempt to procure quit claim deeds from the two married women to whom reference has been made. The appellant claims to have insisted all the time that the title was good, and that he undertook to procure the quit claim deeds only to gratify the whim of the examiner.

One of the required deeds was procured quite promptly but there was some delay, and no little difficulty, about the other. The person from whom it was required resided in California; and considerable correspondence was required before it could be procured. It was, however, finally procured, and transmitted to the appellant or his agent. Information of the execution of the first quit claim deed seems to have been given at once to the appellee, but it does not appear that he ever had any notice of the execution of the latter until the trial of this cause. At all events, the record fails to disclose that any such information was given. The deed was executed in California on March 24, 1894, and was immediately transmitted to Washington. When it was received in Washington does not appear definitely; but it is stated to have been as soon as the mail could bring it. It was not recorded for upwards of a month afterwards.

At last the appellee peremptorily demanded his money from the appellant's agent, and the latter refused to return it. Thereupon the appellee, on April 2, 1894, instituted this suit to recover the amount.

At the trial it appeared that the appellant had sold the property to some one other than the appellee; but the date of the sale does not appear from the record before us. The

appellant testified that he thinks that it was after he had procured the quit claim deeds. And this is the nearest date that is fixed for this sale of the property.

The trial court directed a verdict for the plaintiff upon the ground apparently that the acknowledgments referred to were defective; that in consequence of such defect the title was not good, and that the title at the time the suit was instituted had not been perfected by the delivery for record or the communication to the plaintiff of the two quit claim deeds of which mention has been made. There was judgment for the plaintiff, from which the defendant appealed.

*Mr. Chapin Brown* and *Mr. Arthur H. O'Connor* for the appellant.

*Messrs. Webb, Webb & Lindsley* for the appellee.

Mr. Justice Morris delivered the opinion of the Court:

We deem it unnecessary to rest our decision on the question of the sufficiency or insufficiency of the acknowledgments which have constituted the main point of argument in this case. So far as the title is concerned, that question is now set at rest by the record of the two quit claim deeds; and the doubt, if ever there was good ground for doubt, has been finally and completely removed. No decision from us is now required to sustain the integrity of the title.

But whether that title was good or bad, the appellee was induced by the opinion of the examiner employed by him to regard it as defective and bad; and that conclusion of the examiner he communicated to the appellant and his agent. The appellant and his agent, fortified by the opinion of another examiner, strenuously maintained that the appellee's examiner was mistaken; yet, at the same time, in deference to the opinion of the latter, they undertook to cure the alleged defects in the manner pointed out by him, by procuring quit claim deeds. By their conduct in this regard they virtually acquiesced in the position taken by the

appellee, relieved the latter from any obligation to consummate the agreement within the twenty days specified in the memorandum of the contract, and made the consummation of the contract practically dependent on the procurement of the quit claim deeds. They might have stood by the integrity of their title as it was at the time; but deeming it expedient to endeavor to procure the quit claims deeds in deference to the opinion of the appellee's examiner, it became thereupon their duty to give due effect to this modification of their agreement.

In pursuance of this understanding between the parties, when the first of the two quit claims was procured, it was promptly delivered by the appellant or his agent to the appellee's examiner, and was by him noted on his abstract or certificate of title. But when a delay ensued of over two months and a half thereafter in the procurement of the other deed, the appellee, to whom it does not appear that explanation was given of the cause of the delay, might well have concluded that no such deed would or could be procured. When the deed arrived at last, it does not appear from the record that there was any communication of it either to the appellee or his examiner; and from the testimony on behalf of the appellant, as given in the record before us, although this deed must have been in the possession of the appellant or his agent several days before the institution of this suit, yet the appellee's examiner, who evidently would have regarded this deed as removing all substantial objection to the title and who had so certified in advance, was, for some unexplained reason, kept in total ignorance of its existence. The deed was not delivered for record for more than a month after its receipt by the appellant, or for upwards of a month after the institution of this suit. Under the circumstances of this case, it became the duty of the appellant or of his agent, upon the receipt of this deed, promptly to communicate the fact to the appellee or his examiner, and thereby to fix definitely the liability of the appellee under

his contract. Instead of doing so, the appellant kept the deed in his own possession, or under his own control, and proceeded, without any notice to the appellee, to sell the property to another person. The precise date of this sale does not appear from the record before us.

There is nothing to indicate that, if this second quit claim deed had been tendered to the appellee, or the fact of its execution communicated to him or to his examiner of titles, even after this suit had been instituted, the appellee would not forthwith have complied with the terms of his contract and consummated the purchase of the property. In fact, the appellee testified at the trial that he would have been willing to take the property at any time upon the removal of the defects indicated by his examiner. The failure of the appellant to give notice of this deed, coupled with his subsequent sale of the property to another person, similarly without notice to the appellee, must be regarded as an acquiescence by him in the position taken by the appellee, and can only be justified upon the theory of such acquiescence.

It is very true that when a party, who has contracted to purchase property, violates that contract and, without legal justification, refuses to carry it into effect, he cannot profit by his own wrong and have the benefit of the equitable action of assumpsit to recover back any money paid by him by way of deposit or on account of the purchase. Nor is the other party, who has contracted and bound himself to sell, required to hold the property indefinitely, for the benefit of the intending purchaser, after the contract has been definitely repudiated by the latter. This is the doctrine of the case of *Ketchum* v. *Evartson,* 13 Johns. 358, cited on behalf of the appellant, and of numerous other cases. But the present case differs very greatly from that of *Ketchum* v. *Evartson,* and falls more appropriately within the qualification of that doctrine stated in the case of *Leroy* v. *Beard,* 8 How. 451, 469, and in the case of *Davis* v. *Hall,* 52 Md. 673, 681. For whatever may have been the fault of the appellee here in a legal

aspect upon the assumption that the title was good as it stood when his examiner made his report to him to the contrary, yet the ultimate fault which caused the failure of the contract was the fault of the appellant, or rather of the appellant's agents, which must be charged against him—their failure to notify the appellee of the final removal of the alleged defects in the title.

Such being the condition of things, and the appellant having by his subsequent sale made it impossible now that the contract should be carried into effect, it does not seem just or equitable that he should retain the appellee's money, when he has likewise received the purchase money from the sale actually made by him. Upon this ground, without reference to any other question raised by the record, we are of opinion that the judgment of the Supreme Court of the District of Columbia in the premises was right, and that it ought to be *affirmed, with costs. And it is so ordered.*